MONTGOMERY VS. THE TOWN OF SCOTT.

EVIDENCE: MEDICAL JURISPRUDENCE. (1) *Statute as to medical testimony construed.* (2) *Fact as to broken leg may be proven by one not shown to be an expert.* (3) *Physician may testify as to probable effect of wounds on future health.* (4) *Opinion as to whether road in good condition, improper.*

Montgomery vs. The Town of Scott.

HIGHWAYS. (5, 6) *Liability for injury on town line road.* (7) *Recovery not barred because of defect not pleaded.* (8) *Contributory negligence.*

1. Sec. 14, p. 711, Tay. Stats., which provides that no person "practising physic and surgery" in this state shall "*testify in a professional capacity* as a physician and surgeon in any case, unless such person shall have received a *diploma*," etc., applies only to cases in which such persons are called upon to testify *to their opinions as experts.*

2. In an action for injuries to plaintiff's person, alleged to have been caused by a defective highway, a witness for plaintiff, not shown to have received such diploma, was permitted to testify that "both bones of plaintiff's leg were broken three fingers wide above the ankle." It afterwards appeared that the witness set and dressed the leg. *Held,* that as the fact testified to was not one requiring professional skill for its determination, and the witness was not called upon to express any opinion *as an expert,* there was no error in receiving the testimony.

3. A physician and surgeon examined *as an expert* may testify as to the *probable effects of wounds* and injuries upon the future general health; as, in this case, to plaintiff's liability to paralysis from the injured limb.

4. Where one of the issues was, whether the road in question was defective at the time and place of the injury, a witness for defendant was asked whether said road had been "in good passable condition" since a certain date before the injury. *Held,* that this question called for the *opinion* of the witness *on the very point in issue,* and was properly ruled out. The witness could testify only to *facts* respecting the condition of the road, and from these the jury were to draw their own conclusions.

5. In case of a *town line road,* it is not necessary that an *apportionment* of it should be made by an *order* of the supervisors, which shall be *recorded,* that each town may become liable for defects in the part of said road assigned to it; but there may be a valid *parol apportionment* for that purpose. Tay. Stats., p. 495, §§ 77–79.

6. When such apportionment is made, each town, in relation to that part of the highway apportioned to it, becomes subject to the same liabilities as if the highway were wholly located in such town.

7. The complaint specifies certain defects in the highway as the cause of the injury, and the existence of such defects and their influence in producing the accident were shown at the trial. *Held,* that the fact that a *further defect not specified* in the complaint appears from the evidence to have *aided* in causing the accident, will not prevent a recovery.

8. The jury were instructed that if the plaintiff, while using the highway,

was guilty of any negligence, or want of ordinary care, which in any degree contributed to the injury, there could be no recovery, notwithstanding the highway may have been out of repair. *Held*, on defendant's appeal, that this was a fair statement of the law on the subject, and covered all questions as to any alleged carelessness of the plaintiff and her driver in their manner of riding or driving, or as to any alleged vice of the horses in shying at holes in the highway.

APPEAL from the Circuit Court for *Dodge* County.

The plaintiff, *Alice A. Montgomery*, brought her action to recover of the defendant town damages for injuries to her person alleged to have been caused by the insufficiency of defendant's highway. The complaint alleged that while plaintiff was being carefully driven in a sleigh on a public road on the north side of section one in the said town, by reason of the insufficiency and want of repairs of the highway "at a certain valley which it there crosses, the said highway over and across said valley for a long distance, to wit, the distance of one hundred feet, having at the time aforesaid a surface prepared for traveling of only about eight feet wide, and on each side of said narrow surface there being a precipitous descent of about fifteen feet to the surface of the ground, and the said road at the place aforesaid having no railing, barrier or protection, and the said highway leading down to said narrow portion thereof being also very steep and precipitous, the plaintiff was thrown from the said highway, at the valley aforesaid, to the bottom of the said valley, a distance of about fifteen feet, the sleigh in which she was riding slipping from the said highway and falling upon her;" whereby her left leg was broken, and she was injured in her back, chest and lungs. Answer, a general denial. The evidence is stated in the opinion. The court instructed the jury, among other things, that "if the person using the highway is guilty of any negligence or want of ordinary care, by which I mean such care and prudence as persons of ordinary intelligence ordinarily use under the same circumstances, and if that negligence or want of care contrib-

utes to the injury in any degree, then such person can not recover, notwithstanding the road may have been insufficient and out of proper repair. It is not necessary for the plaintiff to prove, in the first instance, that she did exercise this ordinary care, and that she was not guilty of a want of it which contributed to the injury; but you may find that from all the facts given to you in evidence, and the surrounding circumstances which have been proven to you." The court further instructed the jury, at defendant's request, that a want of care on the part of the driver of the vehicle was as fatal to a recovery as want of care on the part of the plaintiff herself. Verdict for the plaintiff for $1,500 damages, and judgment thereon; from which judgment defendant appealed.

*Frisby & Weil,* for appellant:

Under the statute (Tay. Stats., § 14, p. 711), providing that no person practising physic without a diploma, or without being a member of some legally organized medical society, shall testify in a professional capacity, the evidence of Horsch as to the defendant's leg being broken was improperly received, his competency to give surgical testimony not having been established. 2. The question propounded to Dr. Hunt, as to whether patients were "liable to any other danger, paralysis or any such thing as that, resulting from a broken limb," should have been ruled out, the injury being as to an effect which was wholly speculative and uncertain. 3. The court erred in refusing to allow the question propounded to Pflaster: "Has this road through this hollow been in good passable condition since Mr. Forbes built it in 1869." The question was fully within the reasoning of the court in *Reynolds v. Shanks*, 23 Wis., 307. 4. The statute regulating the laying out of town line roads by the joint action of the supervisors of the two towns, provides that upon laying out the highway the supervisors "shall determine what part of such highway shall be made and kept in repair by each town," etc., and that "each town shall have all the rights, and be subject to all the liabilities, in

relation to the part of such highway to be made or repaired by such town, as if the same were wholly located in such town." Tay. Stats., 495, §§ 77-79.    The latter provision of the statute, imposing liabilities on the town after its portion of the road to make and keep in repair is determined, excludes the idea that the town can be alone liable prior to such determination.   5.  Plaintiff was only entitled to recover, if at all, because of the particular insufficiencies in the highway specified in the complaint.   The holes in the road, which seem to have been the real cause of the accident, are not mentioned in the complaint, and form no part of the negligence on which plaintiff can recover.    See *Davis v. C. & N. W. R'y. Co.*, 18 Wis., 175, opinion of COLE, J.; *Houfe v. Town of Fulton*, 29 Wis., 296. 6.  Plaintiff ought not to recover, because of contributory negligence.   The general denial put the question of her negligence in issue.   *Cunningham v. Lyness*, 22 Wis., 245.  Any negligence of plaintiff's father in driving the team was chargeable to her.   38 Vt., 440.

*G. W. Foster, contra,* argued that the objection to the question put to Horsch, because it was not shown that he was a duly accredited physician, was untenable, since the statute referred only to such testimony as experts alone might give, and not to mere questions of fact.    Ray's Med. Jur., §§ 46, 343, 607 ;  Greenl. Ev., § 440.   The words "testify in a professional capacity," as used in the statute (Tay. Stats., p. 711, § 14), is equivalent to the words "give medical evidence," found in works on medical jurisprudence.   See Ray's Med. Jur., § 597 ; Bouvier's Law Dic., titles " Medical Evidence " and " Experts."   The instruction of the court as to negligence was correct.   There is no more presumption of negligence on the part of plaintiff than of defendant.   *M. & C. R. R. Co. v. Hunter*, 11 Wis., 160.

COLE, J.   After the plaintiff was injured, she was taken to the house of one Horsch, where the fracture of her broken leg

was reduced and the limb was dressed in order that she might be carried home. And the first exception taken by the counsel for the defendant is to the ruling of the court below on the objection taken to the question asked Horsch. He was asked on the part of the plaintiff, if he knew whether either of her legs was broken; and he answered that both bones in the left leg were broken, three fingers wide above the ankle. The witness then proceeded to state the means employed by him in setting and dressing the plaintiff's leg. Now it is said that it was error to permit the witness to answer the question whether the plaintiff's leg was broken, before his competency to give surgical testimony was established. And sec. 14, ch. 33, Tay. Stats., is relied upon to sustain this position. That section, among other things, provides that no person practicing physic and surgery in this state shall testify in a professional capacity as a physician and surgeon in any case, unless such person shall have received a diploma from some incorporated medical society or college, or shall be a member of the state or some county medical society legally organized in this state. We are clearly of the opinion that this view just alluded to is an erroneous construction of the provision, and that it was never intended to apply to a case of this kind. The question whether a leg is broken is one of fact, and in many cases depends upon indications so palpable and obvious that it requires no particular professional skill or knowledge to determine it. When the opinions of medical men are called for on questions of science or skill, *as experts*, this provision was intended to exclude them unless they had a diploma or were members of some legally organized medical society of the state. In such cases they are called upon to testify "in a professional capacity as a physician and surgeon" — not as to facts about which any unprofessional witness might speak, if they had come within his own observation, but upon subjects where peculiar skill and knowledge are deemed essential in order to be capable of forming correct opinions. "Thus," says Prof. Greenleaf, "the

opinions of medical men are constantly admitted, as to the cause of disease, or of death, or the consequences of wounds, and as to the sane or insane state of a person's mind, as collected from a number of circumstances, and as to other subjects of professional skill." · 1 Greenl. Ev., § 440.   And when a medical witness testifies in such a capacity, the statute makes it necessary that he shall have a diploma or be a member of a legally organized medical society of the state, to be competent.   It is true, the witness set the plaintiff's leg, and in this act performed a strictly surgical operation.   But it did not require any peculiar professional learning to discover that the leg was broken. For the plaintiff, as soon as she attempted to get up after being thrown down the embankment, saw that her limb was broken, and told her father so.   The nature of the injury was such that any person of intelligence and judgment could determine what it was, almost as well without as with a medical education. This being the case, there was no error in permitting the witness to answer the question and testify to the fact whether the plaintiff's leg was broken.   It was not a case coming within the spirit and meaning of the section above cited, and where it must appear that the witness possessed the qualifications there prescribed, to render him competent.

The question propounded to Dr. Hunt, however, which was objected to and admitted, came precisely within the rule where the opinions of medical men are admitted.   He was asked his opinion as to the consequences of the fracture upon the health of the plaintiff, and whether she was liable to any other danger, as paralysis or any such thing as that, as the result of the broken limb.   It appeared that this witness had a diploma, and he was therefore competent to express an opinion upon the subject. It is suggested that the inquiry was as to an effect wholly speculative and uncertain ; but the opinions of medical men are constantly admitted as to the consequences of wounds and injuries.   1 Greenl. Ev., § 440, and authorities cited in note 3.

Again, it is insisted that the court erred in sustaining the ob

jection to the question put the witness Pflaster, viz : " Has. this road through this hollow been in good passable condition since Mr. Forbes built it in 1869 ?" It is plain that this question was leading; but it was not objected to on that ground. But it is very obvious that the question was properly excluded, since it was calling for the opinion of the witness upon the very issue which the jury were to determine, and where such opinion was not admissible. If the witness knew any facts relating to the condition of the road, he should have stated them and left the jury to draw their own conclusions from those facts. This rule is well settled. *Reynolds v. Shanks*, 23 Wis., 307; and *Kelley v. Town of Fond du Lac*, 31 id., 180. From the nature of the case the jury were quite as competent to form a judgment as to the sufficiency or insufficiency of the highway from facts submitted on that subject, as the witness could be ; and it is very apparent that this was the issue they were to try and determine.

But, conceding, for the purposes of the argument, that the highway at the *locus in quo* was defective for want of a railing, barrier, or other safeguard placed on the side of the embankment to prevent sleighs or other vehicles from slipping or being thrown down into the valley below, when the surface of the ground was covered with ice or snow, still it is insisted that the defendant is not liable for damages resulting from such defect or want of repair, because the highway is on the line between two towns, and this part has not been apportioned to the *Town of Scott* to be kept in repair. There are several exceptions in the record, mainly founded upon the assumption that the defendant would not be liable under such circumstances. Ample provision is made in the statute for laying out a highway, when necessary, upon the line between two towns, or as near thereto as the situation of the ground will admit. Sec. 77, ch. 19, p. 495, Tay. Stats. And it is enacted that when such a highway is laid out, the supervisors of each adjoining town shall determine what part of the highway shall be made and kept in repair by

each town; and each town has all the rights and is subject to all the liabilities in relation to the part which is apportioned to it to be repaired, as if the same were wholly located in such town. Secs. 78 and 79. It appears that evidence was offered and admitted on the trial, against the objection of the defendant, to establish the fact that in May, 1869, the supervisors of the town of Mitchell and the town of *Scott* had a meeting in respect to this highway, and that it was then agreed that this part of the highway where the plaintiff was injured should be put in repair by the defendant town, and that the defendant, in pursuance of this arrangement, did grade down the hills and construct the embankment, and has since performed work upon that portion of the highway, and assumed control over it. There was, however, no record of any order apportioning the highway between the two adjoining towns; and it is insisted that such an order was essential to bind the defendant and make it liable for the non-repair of the same. We cannot adopt this view of the matter. The statute does not require that this division shall be made by an order of the supervisors which shall be recorded; and we have no doubt that a valid parol apportionment can be made. The supervisors shall determine what part of the highway shall be made and kept in repair by each town; and that such a determination and division of the highway were made in the present case is a fact abundantly established by the evidence. Whether, if this division had not been made, the towns of Mitchell and *Scott* would be severally as well as jointly liable for damages resulting from the insufficiency or defect in the highway, is a question which does not arise on the record, and need not, therefore, be considered. A perfectly valid division of the highway had been made by the supervisors of the adjoining towns. The authorities of the town of *Scott* had "agreed to put that part of the road on the town line in passable shape, so that the public could travel it," by July 15th, 1869, according to the testimony of the witness Hughes. It appears that the defendant did assume control of that portion of the

highway, and expended money and performed labor upon it; and the law imposed upon the defendant the duty of keeping it in repair. It is suggested that the obligation assumed by the defendant, under the arrangement and understanding entered into by the supervisors in May, 1869, was only to put that part of the road in "passable shape—so that the public could travel it;" and did not impose the duty of keeping it thereafter in repair. But this, we think is a mistake. When the division was made, each town, in relation to that part of the highway apportioned to it, became subject to all the liabilities in respect to that part, as if the same were wholly located in such town; that is, it was bound to keep the highway safe and convenient for travel. And if it neglected to perform this duty, and an injury was occasioned by a defect or insufficiency in the highway, the town bound to repair the defect is liable.

But again, it is insisted that the plaintiff should not have recovered upon the complaint, for the reason that it did not specify and allege the particular defect which, according ·to the testimony introduced on the trial, was the real cause of the injury. The complaint, in substance, alleges that in January, 1871, while the plaintiff was being carefully driven in a sleigh on that part of the highway which crosses a valley at the place designated—the highway there having a surface prepared for travel of only about eight feet in width, on each side of which narrow surface was a precipitous descent of about fifteen feet to the ground below—there being no barrier, railing or protection at that place, and the highway leading down to this narrow portion being very steep, she and the sleigh in which she was riding were thrown from the highway down the descent to the ground below; and that she thus sustained the injuries of which she complains. The evidence in regard to the defect which caused the accident was strictly in accordance with these averments. It showed that the road upon which the plaintiff and her father were traveling descended from the east down a steep hill on to this narrow embankment; that the hind bob of

the sleigh, upon which they were sitting, commenced sluing when about half way down the hill, and continued to slue and slide to the south until the clevice which held it to the tongue of the forward bob broke, when they were precipitated down the embankment, the bob falling upon them. The horses were all the time walking. The plaintiff's father testified that he guided the team as carefully as he could, but that the off horse commenced crowding the near horse before they got to the place on the embankment where the sleigh went off. The road-way through the gully or narrow valley was formed by logs and stringers filled in with dirt, and there were some holes along the north side of the track, a few inches deep, in which a man could put his foot,—the largest one directly opposite where this occurred. It is claimed that these holes, which caused the off horse to shy, constituted the real defect in the highway, and occasioned the accident, and not the want of a barrier or safeguard on the side of the embankment. But it is very manifest that if there had been some such barrier or safe-guard, it would have prevented the sleigh from sluing or slid-ing off the embankment. That the absence of a proper barrier at that place to prevent the sleigh from sliding off was a fact from which the jury might find a defect or insufficiency in the highway, we think is clear.

It is also insisted that the evidence shows that the plaintiff and her father did not exercise proper care and prudence in driving the team or in riding upon the hind bob in the manner they did, and were therefore guilty of negligence which con-tributed to the injury. But the law upon that subject seems to have been fairly given to the jury by the court in the charge. The jury was told, in substance, that if the plaintiff, while using the highway, was guilty of any negligence or want of ordinary care which in any degree contributed to the injury, then there could be no recovery, notwithstanding the road might have been insufficient and out of repair. It is obvious that this covered the whole case, and all questions as to any

alleged vices in the horses in shying at holes in the highway, as well as any alleged carelessness in driving or riding upon the bobs in the manner the plaintiff and her father did. There is certainly nothing in the evidence upon which negligence on their part, either in these particulars or in any other act, can be predicated as a matter of law.

There are some other points made upon the brief of counsel for the defendant; but we think they are not material.

The judgment of the circuit court must be affirmed.

*By the Court.* — Judgment affirmed.