The Louisville, New Albany and Chicago Railway Company v. Falvey.

No. 12,203.

THE LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY COMPANY v. FALVEY.

| | |
|---|---|
| 104 | 409 |
| 124 | 198 |
| 126 | 233 |
| 104 | 409 |
| 128 | 57 |
| 104 | 409 |
| 140 | 70 |
| 141 | 14 |
| 104 | 409 |
| 149 | 401 |
| 150 | 390 |
| 104 | 409 |
| 156 | 430 |
| 104 | 409 |
| 163 | 496 |
| 104 | 409 |
| 165 | 561 |
| 104 | 409 |
| 168 | 475 |

EVIDENCE.—*Motion to Strike Out Testimony.—Practice.*—Where a motion to strike out testimony is made, and the adverse party consents that it be sustained, after which the motion is withdrawn, but the court, upon the request of such adverse party, strikes out all the testimony objected to by the motion, the party making the motion can not complain of the action of the court, and the original admission of the testimony is not available error.

SAME.—*Expert Witness.—Hypothetical Question.*—A party, seeking an opinion from an expert witness, may assume in his hypothetical question such facts as he deems proved by the evidence, and it is for the jury to determine whether the facts are correctly assumed.

SAME.—It is only where there is no evidence at all in support of the facts assumed, or where the question is clearly irrelevant, or where it is merely speculative or improperly framed, that the court can interfere to prevent the propounding of a hypothetical question.

SAME.—It is not proper in asking hypothetical questions to incorporate in them the opinions of other expert witnesses. The opinion of an expert witness must be based on facts, and not opinions.

SAME.—*Permanency of Injury.*—It is competent to prove by expert witnesses the probability that the injury complained of will permanently impair the health and physical and mental ability of the plaintiff.

SAME.—Where some of the facts assumed in a hypothetical question have been eliminated by a subsequent ruling of the court, but there still remain in evidence facts upon which an opinion may be properly based, it is not error to refuse to strike out the entire opinion, though such elimination may weaken the value of the opinion.

SAME.—*Railroad.—Negligence.*—In an action against a railroad company for personal injuries alleged to have been caused by the negligent conduct of the defendant's servants, an expert medical witness was asked this question over the objection of the defendant: "State to the jury what fact you observed, what, if any, experiments you made, and what you learned to be the now condition, or the then condition, of the eyes and ear, and how it was done?" Held to be competent.

SAME.—It is always competent to ask a medical witness what observations he made, and what was the condition of the patient he was called upon to examine, without regard to the purpose of the examination.

SAME.—*Cross-Examination of Expert Witness.*—In cross-examining a medical expert it is proper for the cross-examining counsel to state hypothetical cases, for the purpose of testing the skill and knowledge of the witness.

SAME.—*Practice.*—General objections to testimony, on the ground that the

The Louisville, New Albany and Chicago Railway Company *v.* Falvey.

same is incompetent and immaterial, present no available questions entitled to consideration on appeal.

SAME.—*Motion to Strike Out Testimony.*—*Separation of Competent from Incompetent Testimony.*—Where there is competent testimony given both in the examination in chief and on cross-examination, a motion made by the party by whom the witness was called to strike out all of such testimony should be overruled. It is the duty of such party to select the competent from the incompetent testimony, and to point out in his motion the specific testimony objected to, as well as to indicate the character of his objections.

SAME.—*Objection to Medical Examination, Effect of.*—The fact that a plaintiff in an action for personal injuries objected to a medical examination of her person, ordered at the instance of the opposite party, can not affect the merits of the case, and should not be admitted in evidence.

SAME.—*Medical Examination of Party.*—*Declarations of Present Pain.*—Declarations, indicative of present pain, made by a party to medical witnesses at the time of treatment or examination, are admissible.

SAME.—*Declarations of Party During Course of Medical Examination.*—*Semble,* that where medical experts are ordered by the court to examine a party on the motion of his adversary, what is said by such party during the course of such medical examination, in answer to questions asked by the medical experts, is admissible in evidence.

SAME.—*Medical Examination.* — *Experts.* — *Cross-Examination.*— *Practice.*— Where medical experts are ordered by the court to examine a plaintiff, in an action for injuries to the person, and such experts are called and questioned by the defendant as to the result of their examination, the plaintiff may ask on cross-examination how the examination was conducted, and what questions were propounded to the plaintiff.

SAME.—*Examination in Absence of Adverse Party.*—Evidence of an examination of a plaintiff by a medical witness is not rendered incompetent by the fact that the adverse party was not present when it took place; nor, if the examination is properly made, because it was made after the commencement of the action.

SAME.—*Proper Basis of Opinion by Expert.*—A medical expert, who has obtained knowledge of the facts of the case, and has stated the facts to the jury, may take them into consideration in giving his opinion, as well as facts communicated to him in a hypothetical question, and his opinion may rest in part on statements made by his patient.

SAME.—*Directions of Physician.*—In an action for personal injuries, it is proper for the plaintiff to prove the directions given her by her physician, and that she had obeyed them.

SAME.—*Proof of Plaintiff's Condition.*—Where the complaint states the character of the injuries received by plaintiff, and alleges permanent injury, it is proper, under these allegations, to give evidence of the mental and physical condition of the plaintiff.

The Louisville, New Albany and Chicago Railway Company *v.* Falvey.

SAME.—*Opinion of Witness as to Age of Party.—Impeachment.*—Where, on his examination in chief, a witness gives an opinion as to the age of the plaintiff, and on cross-examination is asked for and gives an opinion as to the age of a bystander, it is competent for the plaintiff to call such bystander and prove his age, for the purpose of showing the incapacity of the witness to correctly judge of a person's age.

INSTRUCTION TO JURY.—*Inferences of Fact.*—It is not proper for the court to instruct the jury what inferences of fact they shall draw from the evidence, nor to instruct in detail upon the effect of facts put in evidence.

NEGLIGENCE.—*Action for Personal Injury.—Degree of Care Required of Plaintiff in Securing Medical Aid.—Damages.*—One who is injured by the negligence of another is bound to use ordinary care and diligence in securing medical or surgical aid, and in case of a failure so to do, this should be taken into account in estimating damages, and no damages should be allowed for ailments or diseases that have resulted from the failure to use such care and diligence.

SAME.—*Instruction.—Damages.*—In an action by one who is injured by the negligence of another, an instruction that " It was the duty of the plaintiff to use ordinary care to cure and restore herself, and if you find from the evidence that the plaintiff failed to use such ordinary care in the premises, but that she unnecessarily exposed herself in inclement weather, or otherwise, after receiving her injuries, if any she received in such accident, and thereby increased and aggravated such injuries, and enhanced their evil effects, you will take these facts into account in arriving at your verdict—if you find for the plaintiff—and should not allow any damages to plaintiff for any ailments, injuries or diseases, or their aggravation, from which plaintiff has been or may be suffering by reason of such exposure, and from which she would not otherwise be suffering," correctly states the law.

SAME.—*Predisposition to Disease.—Instruction.*—In an action for personal injuries, alleged to have been received by the negligence of others, an instruction, in effect, that, "If you find that the plaintiff received the injuries complained of, or any of them, in the manner alleged, and at that time she was predisposed to malarial, scrofulous or rheumatic tendencies, but otherwise in good health, and that said injuries, or any of them solely, excited or developed said predisposition to malarial, scrofulous or rheumatic tendencies, so that thereby, without the fault of plaintiff, her present condition, whatever you may find that to be, has directly resulted, then I instruct you that the plaintiff is entitled to recover to the full extent of whatever you may find her present condition to be," correctly states the law.

SAME.—*Measure of Damages.*—In such action, the jury, in estimating the amount of damages to which plaintiff is entitled, may take into consideration expenses actually incurred, loss of time occasioned by the immediate effect of the injuries, and physical and mental suffering caused by

and arising out of such injuries. They may also consider the professional occupation of the plaintiff, and her ability to earn money. The plaintiff will be entitled to recover for any permanent reduction of her power to earn money by reason of such injuries, and the amount assessed should be such a sum as will in the judgment of the jury fully compensate the plaintiff for such injuries, or any of them so sustained.

From the Tippecanoe Circuit Court.

*G. W. Easley, G. W. Friedley, W. F. Stillwell, S. O. Bayless* and *W. H. Russell,* for appellant.

*B. W. Langdon, T. F. Gaylord* and *J. F. McHugh,* for appellee.

ELLIOTT, J.—The appellee's complaint alleges that she was received as a passenger on one of the appellant's trains and was injured in a collision caused by the negligence of the appellant's servants.

The first question in logical order arises upon the rulings made on the admission of the testimony of Dr. R. M. O'Ferrall. We are satisfied that the appellant is not in a situation to successfully complain of these rulings, for it obtained all it properly asked upon this subject. This we say for the reason that the appellee consented that the appellant's motion to strike out the testimony might be sustained; to this the former objected and withdrew its motion, but, notwithstanding the withdrawal of the motion, the court, upon the request of the appellee, did strike out all of the testimony objected to by the appellant. As the latter received all it asked, it has no just grounds of complaint.

A party seeking an opinion from an expert witness may assume in his hypothetical question such facts as he deems proved by the evidence. A recent author says, of such questions: "If framed on the assumption of certain facts, counsel may assume the facts in accordance with his theory of them, it not being essential that he should state the facts as they actually exist." Rogers Expert Testimony, 39. Another author thus states the rule: "It is the privilege of the counsel in such cases to assume, within the limits of the evidence, any

state of facts which he claims the evidence justifies, and have the opinion of experts upon the facts thus assumed." Lawson Expert and Opinion Ev. 153. In the recent case of *Quinn* v. *Higgins*, 63 Wis. 664, the Supreme Court of Wisconsin said : "The rule in that respect must be that, in propounding a hypothetical question to the expert, the party may assume as proved all facts which the evidence in the case tends to prove, and the court ought not to reject the question on the ground that, in his opinion, such facts are not established by the preponderance of the evidence. What facts are proved in the case, when there is evidence to prove them, is a question for the jury and not for the court. The party has the right to the opinion of the expert witness on the facts which he claims to be the facts of the case, if there be evidence in the case tending to establish such claimed facts, and the trial judge ought not to reject the question because he may think such facts are not sufficiently established." This court has often declared the rule in substantially the same language as that employed by the authors from whom we have quoted. *Davis* v. *State*, 35 Ind. 496 (9 Am. R. 760) ; *Bishop* v. *Spining*, 38 Ind. 143 ; *Guetig* v. *State*, 66 Ind. 94 (32 Am. R. 99) ; *Nave* v. *Tucker*, 70 Ind. 15 ; *Elliott* v. *Russell*, 92 Ind. 526 ; *Goodwin* v. *State*, 96 Ind. 550, *vide* authorities cited, pp. 555, 574.

The appellee's counsel had a right to assume such facts as they deemed proved, and it was for the jury, as we have many times decided, to determine whether the facts were or were not justly assumed. *Goodwin* v. *State*, *supra*, *vide* authorities cited p. 561 ; *Elliott* v. *Russell*, *supra*; *Vanvalkenberg* v. *Vanvalkenberg*, 90 Ind. 433 ; *Fulwider* v. *Ingels*, 87 Ind. 414 ; *Guetig* v. *State*, *supra*.

Some of the facts assumed in the hypothetical questions propounded to Dr. O'Ferrall were eliminated by the subsequent ruling of the court upon the appellee's motion to strike out part of his testimony, but enough facts remained to entitle his opinion to go to the jury under the rule declared in the

authorities to which we have referred. Where there are facts upon which an opinion may be properly based, it is not error to refuse to strike out the entire opinion, for such an opinion should go to the jury for what it is worth, although the elimination of some of the facts may weaken the value of the opinion. But if we are wrong in this view, still no harm resulted, for the same facts testified to by Dr. O'Ferrall were substantially proved by other witnesses. Whatever view is taken of the ruling on Dr. O'Ferrall's testimony, no substantial harm was done the appellant. Strength is added to this view by the further fact that the court in its instructions, in very clear and forcible terms, directed the jury to disregard that part of the testimony to which the appellant's motion to strike out was addressed.

The question asked Dr. Hallihan was not answered, but other questions were substituted, and it is quite clear that no harm resulted from the bare asking of the question, even though it was an improper one.

Dr. Burke was asked: "State to the jury what fact you observed, what, if any, experiments you made, and what you learned to be the now condition, or the then condition, of the eyes and ear, and how it was done." We can perceive no objection to this question, for it surely is always competent to ask a medical witness what observations he made and what was the condition of the patient he was called upon to examine. It makes no difference, so far as concerns the competency of the testimony, what the purpose of the examination was, although that fact might, perhaps, exert some influence upon the credibility of the witness. If the physician did in fact make an examination, his observations of the condition of the person examined by him are unquestionably competent.

We have again and again decided that objections to testimony must be specifically stated to the trial court, and that only such objections as were stated to that court can be considered on appeal. In the bill of exceptions the objection

to a part of Dr. Webster's testimony is thus stated : "To which question the defendant objected because he has not said that he based his opinion on what the plaintiff told him, and also as being irrelevant, incompetent and immaterial, and not cross-examination, which objection the court overruled, to which ruling of the court the defendant at the time excepted."

These are the only grounds of objection which we can consider, and we find no merit in them. It was the right of the counsel of appellee, in cross-examining Dr. Webster, to test his knowledge and skill as a medical expert, and also to ascertain the grounds upon which he based his opinion. This right was not abridged by the answer of the witness that he did not take into account the statements of the appellee, since, to hold otherwise, would enable a medical witness to shut off all investigation as to his methods of examination by a general statement that he did, or did not, take certain matters into consideration, and to allow this would be to destroy one of the great purposes of a cross-examination. We can not doubt that a cross-examining counsel has a right to know how a medical investigation was conducted, and what method was pursued. He has a right to know this for the purpose of ascertaining whether the examination was a thorough one, and also for the purpose of discovering whether skill and care were used.

So far as the statement of the ·objection urges that the testimony was incompetent and immaterial, it is not entitled to consideration on appeal, for the reason that it is not sufficiently specific. General objections of this character present no available questions. *Over* v. *Schiffling,* 102 Ind. 191; *Shafer* v. *Ferguson,* 103 Ind. 90 ; *Bottenberg* v. *Nixon,* 97 Ind. 106 ; *Jones* v. *Angell,* 95 Ind. 376 ; *Lake Erie, etc., R. W. Co.* v. *Parker,* 94 Ind. 91 ; *Harvey* v. *Huston,* 94 Ind. 527 ; *McClellan* v. *Bond,* 92 Ind. 424 ; *Stanley* v. *Sutherland,* 54 Ind. 339.

In cross-examining a medical expert, it is proper for the cross-examining counsel to state hypothetical cases for the

purpose of testing the skill and knowledge of the witness. *Davis* v. *State, supra,* see p. 498; Rogers Expert Testimony, 50. It was, therefore, proper for the appellee, in cross-examining Dr. Webster, to state a hypothetical case and ask his opinion upon it.

Where there is competent testimony given both in the examination in chief and on cross-examination, a motion made by the party by whom the witness was called to strike out all of such testimony should be overruled. *Wolfe* v. *Pugh,* 101 Ind. 293; *Elliott* v. *Russell, supra.* It is the duty of the party to select the competent from the incompetent testimony, and he will not be allowed to impose that burden on the trial court. *Cuthrell* v. *Cuthrell,* 101 Ind. 375. This is not a mere arbitrary technical rule, but is one founded on solid principle and essential to the fair administration of justice. It is in harmony with the well settled rule of practice, everywhere obtaining, that the motion of a party must point out the specific testimony objected to; and indicate the character of the objections; and it is also in harmony with the familiar rule, that if a demurrer is addressed to an entire pleading it must be overruled, although the pleading may be bad in part.

We have no doubt that much of the testimony objected to was competent. We regard it as firmly settled that declarations indicative of present pain are admissible. No authority maintaining a different doctrine is referred to, and we know of none. Much of the testimony which appellant sought to have rejected was as to statements made to medical witnesses indicative of present pain, and this testimony was clearly competent.

The doubt in our minds is as to whether any part of the testimony objected to was incompetent. Where, as here, medical experts are ordered by the court to examine the plaintiff, and this is done upon the motion of the defendant, it would seem that what was said by the plaintiff during the course of the medical examination, in answer to questions asked by the medical experts, should go in evidence. They are decla-

rations accompanying an act, and the general rule undeniably is, that where the act is admissible, so, also, are the declarations accompanying it. But we need not, and we do not, decide this question.

Where medical experts are ordered to examine a plaintiff, and they are called and questioned by the defendant as to the result of their examination, the plaintiff has a right to ask, on cross-examination, how the examination was conducted, and this necessarily includes the right to ask what questions were propounded to the plaintiff. If it were otherwise, the plaintiff could not get fully before the jury the method of investigation pursued by the medical experts, and to deny this would be an unjustifiable restriction of the important right of cross-examination. Another reason supports our conclusion, and that is this: Where a party gives evidence of a part of a transaction, his adversary has a right to full details of the whole transaction.

Evidence of an examination of a plaintiff made by a medical witness is not rendered incompetent by the fact that the adverse party was not present at the time it took place. A plaintiff who submits to an examination by a physician can not be deprived of the testimony of the physician upon the ground that it was made at a time when the defendant was not present.

If the examination of a medical expert is properly made, it is not to be kept out of the evidence because it was made after the commencement of the action. Doubtless, the circumstances under which a medical examination was made may affect, either beneficially or injuriously, the credibility of the witness, but the mere fact that it was made after the action was instituted can not destroy its competency.

We have carefully read Dr. Burke's testimony, and we can not find that he gave in evidence any statement made to him by the appellee as to past symptoms and pain. In one place he says that, "I, having convinced myself then that there

was an incipient paralysis of the muscles of the eye, and having questioned the lady whether she could see double sometimes, and she answering me that it was a great tribulation"—but here he was interrupted by appellant's counsel, and, on resuming, he stated the result of his own observations without rehearsing any statements made by the appellee. We can not perceive the shadow of a reason for affirming that there was here any statement of past symptoms; on the contrary, it clearly appears that the symptoms referred to were present at the time the examination was made. It is not necessary for us to decide whether statements of past symptoms are or are not admissible, although it is proper to say that there are very many well considered cases declaring that they are admissible, for we are clearly of the opinion that the testimony was descriptive of present and not of past symptoms.

We have already said that it is proper to assume facts in a hypothetical question, and we now add that it is always proper to incorporate in a question to a medical expert the result of knowledge obtained by an examination made by him. A medical expert who has obtained knowledge of the facts of the case, and has stated the facts to the jury, may take them into consideration in giving his opinion. It seems quite clear to us that knowledge obtained from actual observation is as important and weighty as knowledge communicated in an assumption made in a hypothetical question. The physician who examines and treats a case is in a situation to know as much, if not more, of the real condition of his patient than those who have not seen the patient at all, or have seen him but once. We can conceive of no reason that would require a physician in stating his opinion to the jury to exclude the result of his actual observation and knowledge. In *Burns* v. *Barenfield*, 84 Ind. 43, it was said, in speaking of the testimony of a physician, that "He must base his opinion upon his own testimony, or upon a statement of the facts assumed to have been proven." One of the rules stated by Mr. Lawson is this: "The opinion of a

medical expert may be based either on his acquaintance with the party whose condition is under investigation or upon a medical examination of him which he has made, or upon a hypothetical case stated to him in court." Lawson Expert and Opinion Ev. 144. A physician can not be permitted to decide upon the credibility of witnesses, nor to take into consideration facts known to him and not communicated to the jury, but, after having communicated such facts in his testimony, he may take them into consideration in forming his opinion. *Koenig* v. *Globe Mut. L. Ins. Co.*, 10 Hun, 558; *Hunt* v. *Lowell Gas Light Co.*, 8 Allen, 169; *Van Zandt* v. *Mutual Benefit Life Ins. Co.*, 55 N. Y. 169 (14 Am. R. 215); *Bush* v. *Jackson*, 24 Ala. 273; *Bennett* v. *Fail*, 26 Ala. 605.

The opinion of a medical witness may rest in part on statements made by his patient. Upon this subject the authorities are in harmony, although there is some difference of opinion as to whether statements of past symptoms may be taken into consideration. *Barber* v. *Merriam*, 11 Allen, 322; *Thompson* v. *Trevanion*, Skinner, 402; *Aveson* v. *Kinnaird*, 6 East, 188; *Bacon* v. *Charlton*, 7 Cush. 581; *Denton* v. *State*, 1 Swan (31 Tenn.) 278; *Illinois Central R. R. Co.* v. *Sutton*, 42 Ill. 438; *State* v. *Gedicke*, 43 N. J. L. 86; *Eckles* v. *Bates*, 26 Ala. 655; *Quaife* v. *Chicago, etc., R. W. Co.*, 48 Wis. 513 (33 Am. R. 821); *Brown* v. *New York Cent. R. R.*, 32 N. Y. 597; *Towle* v. *Blake*, 48 N. H. 92; *Carthage T. P. Co.* v. *Andrews*, 102 Ind. 138; *Town of Elkhart* v. *Ritter*, 66 Ind. 136.

Counsel for appellant assert that hypothetical questions asked by the appellee required the medical expert to decide upon disputed facts, but we find, on an examination of the record, that counsel are in error in assuming that the questions do call upon the witnesses to decide upon disputed matters of fact. If the assumption of counsel were correct, we should not hesitate to adopt their conclusion, but it is not a just one, for the facts are assumed to exist in each and all of the questions. The learned and able judge who tried the case,

in ruling upon one of these questions, justly remarked: " If the opinion is elicited on a false state of facts, it has no weight; if the facts put to him are proved, it is otherwise." This is the law. If the facts upon which the opinion is based are not proved, the opinion is valueless, or if there is a failure to prove some of the material facts, the opinion is to that extent weakened and impaired. *Goodwin* v. *State, supra,* and authorities cited. Whether the facts are all proved, or to what extent proved, is a question, not for the court, but for the jury, unless, indeed, the case is one in which there is no evidence at all tending to prove the existence of the facts assumed.

We have no doubt that mere fanciful questions, where there is no evidence at all in support of the facts assumed, or questions assuming facts wholly irrelevant to the subject of the investigation, should be excluded. *People* v. *Augsbury,* 97 N. Y. 501 ; *Fairchild* v. *Bascomb,* 35 Vt. 398 ; *Williams* v. *Brown,* 28 Ohio St. 547. But, where there is evidence either directly proving the facts assumed, or evidence from which such facts may be inferred, the court can not invade the province of the jury and decide upon the facts. It is only where there is no evidence at all in support of the facts assumed, or where the question is clearly irrelevant, or where it is merely speculative, or where it is improperly framed, that the court can interfere.

Counsel refer us, among other cases, to the case of *Hitchcock* v. *Burgett,* 38 Mich. 501. That case decides, as we have here and elsewhere decided, that a medical expert must not be called upon to decide disputed questions of fact. *Craig* v. *Noblesville, etc., G. R. Co.,* 98 Ind. 109 ; *Burns* v. *Barenfield,* 84 Ind. 43. We do not doubt the correctness of this rule, but it can not apply where, as here, the facts are assumed, and the opinion is asked upon the facts which, the witness is informed, are to be regarded by him as actually existing.

We have already said that the medical witness must state to the jury all the facts within his own knowledge which he .

takes into consideration in forming his opinion. Upon this point *Hitchcock* v. *Burgett, supra,* goes no further than we have done. But the appellant can get no comfort from this rule, for the physicians did state the facts upon which they based their opinions.

In cross-examining a medical expert counsel have a right to assume the facts as they believe them to exist, and to ask the expert's opinion upon the facts thus assumed. An examination in chief can not be so conducted as to compel the cross-examining counsel to merely follow the line of questions there asked; but, when a general subject is opened by an examination in chief, the cross-examining counsel may go fully into details, and may put the case before the expert witness in various phases. Each side has a right to take the opinion of the witness upon its theory of the facts established by the evidence. While it is true that a cross-examination must be confined to the subject of the examination in chief, it is not true that the cross-examining party is confined to any particular part of the subject. He has a right in such a case as this to leave out of the hypothetical question facts assumed by the counsel on the direct examination, if he deems them not proved, and he also has the right to add to the question such facts as he thinks the evidence establishes. *Davis* v. *State, supra;* Rogers Expert Testimony, 46.

A very long and much involved hypothetical question was put to Dr. Webster by the appellant, but, upon the appellee's objection, the court refused to permit it to be answered. To this question there is at least one valid objection. This objection is, that it assumes, as one of the facts, the opinion of another physician that Miss Falvey, the appellee, was not suffering from a lesion of the spine. It is not proper in asking hypothetical questions to incorporate in them the opinions of other expert witnesses. An opinion of an expert witness can not be based upon opinions expressed by other experts. Facts, and not opinions, must be assumed in the questions. If it were otherwise, opinions might be built upon

opinions of experts, and the substantial facts driven out of the case.    An opinion can not rest, in whole or in part, upon other opinions, but must rest upon fact.

It is competent to prove by medical experts the probability that the injury will permanently impair the health and physical or mental ability of the plaintiff.    In cases of this class there can be one action only, and in the one action all damages, past and prospective, must be recovered.    *City of Elkhart* v. *Ritter*, 66 Ind. 136; *City of North Vernon* v. *Voegler*, 103 Ind. 314.  In order to assist the jury in arriving at a conclusion as to the character of the injury and the probability of its permanently affecting the plaintiff, it is proper to take the opinion of medical experts upon that subject. *Tinney* v. *New Jersey Steamboat Co.*, 12 Abbott's Pr. N. S. 1; *Filer* v. *New York Central R. R. Co.*, 49 N. Y. 42; *Wilt* v. *Vickers*, 8 Watts, 227; *Kent* v. *Town of Lincoln*, 32 Vt. 591; *Johnson* v. *Central Vermont R. R. Co.*, 56 Vt. 707; *Hoard* v. *Peck*, 56 Barb. 202; *Montgomery* v. *Town of Scott*, 34 Wis. 338; *Toledo, etc., R. W. Co.* v. *Baddeley*, 54 Ill. 19 (5 Am. R. 71); *Anthony* v. *Smith*, 4 Bosw. 503.

The affidavit of Dr. O'Ferrall was excluded on the motion of the appellee, and of this ruling the appellant complains.    It is said that this affidavit was competent for the purpose of showing that the appellee objected to a medical examination of her person.    We perceive no merit in this position.    The appellee unquestionably had a right to make the objection she did, and the jury could have nothing to do with her conduct in opposing an examination.    It is a debatable question whether a party can be compelled to submit to a medical examination at the instance of the opposite party, and it can not affect the merits of the case that an objection is made to such an examination.

If the appellant's purpose was to contradict Dr. O'Ferrall, then the proper ground for an impeachment should have been laid.    As no foundation for an impeachment was laid, the

affidavit was not admissible for the purpose of contradicting him.

It was proper for the appellee to prove the directions given her by her physician, and that she had obeyed them. This evidence was competent to rebut the inference that her own imprudence, or her disregard of medical advice, had aggravated her injuries.

The complaint states the character of the injuries received by the plaintiff, and alleges that she was permanently injured, and under these allegations it was proper to give evidence of the mental and physical condition of the plaintiff. In *Ohio, etc., R. W. Co.* v. *Selby*, 47 Ind. 471 (17 Am. R. 719), it was said : " The complaint charged that the plaintiff was grievously bruised, hurt, and injured. Under these general allegations, the plaintiff was entitled to prove any and all injuries which he received, and which were the natural consequence of the wrongful act of the appellant." The case quoted from is approved in *Town of Elkhart* v. *Ritter, supra*, and is sustained by many authorities, among them *Delie* v. *Chicago, etc., R. W. Co.*, 51 Wis. 400, *Johnson* v. *McKee*, 27 Mich. 471, *Ehrgott* v. *Mayor, etc.*, 96 N. Y. 264 (48 Am. R. 622).

Edmund H. Applegate was called as a witness by the appellant, and among other questions asked him was this : "State what her apparent age was." To this the witness answered : " You want my opinion of her age ? " and counsel, answering the inquiry of the witness, said : " Yes, sir." Whereupon the witness replied : " In my opinion she was 22 or 23, or 4 or 5 ; from 23 to 25 in appearance." On cross-examination appellee's counsel, pointing to a bystander named Stephen Wilstach, asked Applegate, " How old do you think he is ? " and the answer of Applegate was, " Well, I think he is about 55." In giving evidence in reply the appellee called Wilstach and asked him his age, to which he replied that he was 46 years of age. We think there was no error in this ruling. It was competent for the appellee to prove that Applegate's opinion was of little or no value, because of his in-

capacity to correctly judge of a person's age. It is said by appellant's counsel that in asking Applegate to give his opinion as to Wilstach's age, he was called upon to make a guess, but this is an erroneous assumption, for, in calling upon Applegate to give his opinion as to Wilstach's age, no more was done by appellee than was done by appellant in asking Applegate to give his opinion of Miss Falvey's age.

The testimony was not irrelevant. The rule upon this question is thus stated by Mr. Stephens: "Facts, not otherwise relevant, are deemed to be relevant if they support or are inconsistent with the opinions of experts, when such opinions are deemed to be relevant." Stephen Ev., art. 50. The reason for this rule is that it is proper to test the capacity of the witness and to ascertain the reasonableness or establish the unreasonableness of his opinion. *Folkes* v. *Chadd*, 3 Doug. 157; *Davis* v. *State, supra.*

The court gave the following instruction:

"It was the duty of the plaintiff to use ordinary care, judgment and diligence in securing medical or surgical aid after she received the injuries complained of, if any she received, and if you find from the evidence that after she received such injuries, if any she did receive, she failed to use such ordinary care, judgment and diligence in procuring timely medical or surgical aid; and if you further find from the evidence that, by reason of such failure, her condition is now different and worse than it would have been if she had used such ordinary care, judgment and diligence in the premises, then, if you find for the plaintiff, you should take this into account in making up your verdict, and should not allow her any damages for ailments and diseases, if any, that may have resulted from such failure."

This instruction expresses the law correctly. One who is injured by the negligence of another is bound to use ordinary care and diligence in securing medical or surgical aid, but he is bound to no higher degree of care or diligence. Beach Cont. Neg. 21.

The theory of the appellant's seventh instruction seems to be that the injured person must use more than ordinary care and diligence, and this is not the law.   If this is not the theory of that instruction, then there is no substantial difference between it and the one given by the court.

Another instruction given reads thus:

"And so, too, it was the duty of the plaintiff to use ordinary care to cure and restore herself, and if you find from the evidence that the plaintiff failed to use such ordinary care in the premises, but that she unnecessarily exposed herself in inclement weather, or otherwise, after receiving her injuries, if any she received in said accident, and thereby increased and aggravated such injuries and enhanced their evil effects, you will take these facts into account in arriving at your verdict—if you find for plaintiff—and should not allow any damages to plaintiff for any ailments, injuries or diseases, or their aggravation, from which plaintiff has been, or may be, suffering by reason of such exposure, and from which she would not otherwise be suffering."

We regard this instruction as unusually clear and forcible, and we are satisfied that it correctly states the law.   A plaintiff is not bound to use extraordinary care to prevent an injury from developing into evil consequences, but is bound to use ordinary care and diligence.   It is true that in some cases ordinary care will require a high degree of care, for care must always be proportionate to the danger, in order to be even ordinary care, but there is no requirement that in any case more shall be done than a person of ordinary prudence would do under like circumstances.   Beach Cont. Neg. 22.

We are not able to perceive any substantial difference between the eighth instruction asked by appellant's counsel and that given.   They say:   "The court's instruction, while embodying most of the defendant's instruction, beclouds it and renders it misleading and nullifies its effect by telling the jury, in substance, that it was the duty of the plaintiff to use ordinary care to cure herself."   The instruction is not sub-

The Louisville, New Albany and Chicago Railway Company v. Falvey.

ject to this criticism. It is fair in all its parts, clear in its language, and consistent in its general tenor. It is, indeed, much clearer than that presented by counsel.

It is the law of this State, again and again declared, that where the court in one instruction states the rule of law correctly, it is not bound to repeat it in subsequent instructions. *Union Mut. Life Ins. Co.* v. *Buchanan,* 100 Ind. 63; *Goodwin* v. *State, supra,* and authorities cited.

It is not proper for the court to instruct the jury what inferences of fact they shall draw from the evidence. *Union Mut. Life Ins. Co.* v. *Buchanan, supra,* see pp. 81, 82. For this reason, if for no other, the second instruction asked by the appellant was properly refused. But there is another objection to this instruction, and that is this: It is upon a collateral and isolated fact. Courts can not undertake to instruct in detail upon the effect of facts put in evidence, for, if it were otherwise, instructions would be of such length as to perplex and confound the most intelligent jury that ever went into the box.

The court gave these instructions: "A common carrier of passengers is bound to carry and transport for hire persons who are sick, weak, debilitated or predisposed to disease, as well as those who are healthy and robust; and if you find from the evidence that the plaintiff received the injuries complained of, or any of them, in the manner alleged in the complaint, and that at the time of the reception of said injuries, or any of them, the plaintiff was predisposed to malarial, scrofulous or rheumatic tendencies, but otherwise in good health, and you further find that said injuries, or any of them solely, excited or developed said predisposition to malarial, scrofulous or rheumatic tendencies, so that thereby, without the fault of the plaintiff, her present condition, whatever you may find that to be, has directly resulted, then I instruct you that the plaintiff is entitled to recover to the full extent of whatever you may find her present condition to be.

"The court further instructs the jury that the plaintiff

must show, by a preponderance of the evidence, that any injuries, ailments, or diseases from which she is now suffering, if any such there be, are the result of her injuries sustained at the time of the accident in evidence. And the court further instructs the jury that unless they find the facts to be so established, by a preponderance of the evidence, they can not assume that such injuries, ailments or diseases have resulted from said accident."

The first of these instructions was given upon the request of the appellee; the second upon the request of the appellant. Taken together, they express the law quite as favorably to the appellant as it had any right to ask. The instruction asked by the appellee, standing alone, contains nothing of which the appellant can justly complain. The question presented by these instructions has been before this court, in cases similar in every essential particular, at least twice, and the general principle involved has been asserted in very many cases. *Jeffersonville, etc., R. R. Co.* v. *Riley*, 39 Ind. 568, 580; *Terre Haute, etc., R. R. Co.* v. *Buck*, 96 Ind. 346 (49 Am. R. 168). In the latter case the question was fully discussed and many authorities cited, and it is not necessary to again review the cases. It may, perhaps, be proper, as the question is an important one, to direct attention to some cases not there referred to. The case of *Baltimore, etc., R. W. Co.* v. *Kemp*, 61 Md. 74, was that of a passenger on a railway, injured by the company's negligence, and it was there held that if the injury developed into a cancer the company was liable for the consequences resulting from it.

In the course of the opinion it was said: " That the female plaintiff may have had a tendency or predisposition to cancer, can afford no proper ground of objection. She in common with all other people of the community had a right to travel or be carried in the cars of the defendants, and she had a right to enjoy that privilege without incurring the peril of receiving a wrongful injury that might result in inflaming and developing the dormant germs of a fatal disease. It is not for the

defendants to say that because they did not, or could not in fact, anticipate such a result of their negligent act, they must therefore be exonerated from liability for such consequences as ensued." It was also said : " The defendants must be supposed to know that it was the right of all classes and conditions of people, whether diseased or otherwise, to be carried in their cars."

In a case the same in principle as the present, the Supreme Court of Wisconsin said : " It is reasonable to expect that in certain cases, if an injury happened to one of the latter class, his full recovery therefrom may be retarded or prevented by such predisposition or tendency to disease. In the present case the defendant is chargeable with knowledge that persons with a constitutional tendency to scrofula  *  * constantly travel its streets and sidewalks, and that such tendency to that disease might greatly aggravate a bodily injury. Hence it had reasonable grounds to expect that if one of that class were injured by reason of the admitted defect in the sidewalk, the disease might develop, and greatly retard, and perhaps prevent a cure, as in this case." *Stewart* v. *City of Ripon*, 38 Wis. 584. The court cited, as sustaining its decision, *Oliver* v. *Town of La Valle*, 36 Wis. 592, and *Kellogg* v. *Chicago, etc., R. W. Co.*, 26 Wis. 223 (7 Am. R. 69).

We can not prolong this opinion by referring to the other decided cases, nor is it necessary that we should do so, for many are collected in *Terre Haute, etc., R. R. Co.* v. *Buck*, *supra*, and, although counsel have bestowed much labor upon their briefs, only one case is cited that even remotely opposes the doctrine of our cases. The single case cited by counsel is that of *Pullman Palace Car Co.* v. *Barker*, 4 Col. 344 (34 Am. R. 89), and that case has, whenever it has been referred to by other courts, been declared to be unsound. Among other courts that have denied its authority is our own. *Cincinnati, etc., R. R. Co.* v. *Eaton*, 94 Ind. 474 (48 Am. R. 179) ; *Terre Haute, etc., R. R. Co.* v. *Buck*, *supra*, see p. 352.

We can not close the discussion of this branch of the case

better than by referring to a recent work where the subject is exhaustively discussed and many cases reviewed, and where it is said : " These rules are time-honored and indisputable, and are universally applied, except in cases where the courts cut adrift from principles. In the case of personal injuries received by passengers through the negligence of a railway company, they are especially applicable, and necessary to secure to the injured party his just rights." 2 Wood Railway Law, 1232.

The court gave the following instruction :

" 4. If you find under the evidence, that the plaintiff is entitled to recover, it will be your duty to assess the amount of damages which, in your judgment, she should recover. In estimating this amount, you may take into consideration expenses actually incurred, loss of time occasioned by the immediate effect of her injuries, and physical and mental suffering caused by and arising out of her injuries. In addition you may consider the professional occupation, if any, of the plaintiff, and her ability to earn money, and she will be entitled to recover for any permanent reduction of her power to earn money by reason of her injuries; and the amount assessed should be such a sum as, in your judgment, will fully compensate her for the injuries, or any of them, thus sustained."

One of the objections urged to this instruction is, that it does not require the jury to assess the damages from the evidence in the case. There is no force in this objection. No juror of average intelligence could fail to understand that the court directed him to be guided by the evidence. Speaking of an instruction very similar to the one under immediate mention, it was said, by WORDEN, J., in *City of Indianapolis* v. *Scott*, 72 Ind. 196, that " The court enumerated certain matters that formed the elements of damages. But no jury of reasonable intelligence could have been misled by the charge into the supposition that such matters could be considered unless shown by the evidence. As to the latter part

of the charge, the jury could not suppose they were author-
ized to *find* anything except from the evidence."

The instruction before us properly enumerates the elements
to be considered in estimating the damages.   If the capacity
of the plaintiff to earn money was diminished by injury, she
is entitled to be compensated, and the impairment of her
ability to earn money is an element to be considered in com-
puting the amount of the recovery.   *Carthage T. P. Co.* v.
*Andrews, supra; Indiana Car Co.* v. *Parker,* 100 Ind. 181,
*vide* auth. p. 195; *City of Indianapolis* v. *Gaston,* 58 Ind.
224.

We can not disturb the verdict upon the ground that the
damages are excessive.   It has long been the rule in this
State, declared and enforced by many decisions, that in cases
of this character a new trial will not be granted unless the
damages are such as to strike every one with the enormity
and injustice of them, and such as to induce the court to be-
lieve that the jury must have acted from prejudice, partiality
or corruption.   *Hoagland* v. *Moore,* 2 Blackf. 167; *Guard*
v. *Risk,* 11 Ind. 156; *Yater* v. *Mullen,* 23 Ind. 562; *Alex-
ander* v. *Thomas,* 25 Ind. 268; *Reeves* v. *State, ex rel.,* 37 Ind.
441; *Ohio, etc., R. W. Co.* v. *Collarn,* 73 Ind. 261 (38 Am. R.
134); *Lake Erie, etc., R. W. Co.* v. *Fix,* 88 Ind. 381 (45 Am.
R. 464); *Indiana Car Co.* v. *Parker, supra.*

Judgment affirmed.

Filed Nov. 23, 1885.

## On Petition for a Rehearing.

ELLIOTT, J.—This case was orally argued and was also
argued by appellant's counsel in two printed briefs of more
than one hundred and fifty pages, and now, on the petition
for a rehearing, they have filed an additional brief of nearly
forty printed pages, but discuss no question not before dis-
cussed by them and decided by us, though they make many
assertions which, if correct, would convince us that our former

opinion was erroneous; as, however, assertions are not arguments, we can not yield our convictions.

We held in the previous opinion, that as the trial court had offered to sustain appellant's motion to strike out part of Dr. O'Ferrall's testimony, and as appellant had resisted and had withdrawn the motion, which was afterwards renewed by the appellee and sustained by the court, appellant had no just reason to complain. We confess our inability, notwithstanding the abundance of assertion, to see anything in appellant's criticism on our ruling that bears any resemblance to reason. If there is any rule of practice that will permit a party to successfully complain, where the trial court offers to sustain a motion made by him, it has certainly hitherto escaped the notice of the courts and law-writers. It is said by counsel: "Will the court countenance a motion of this character where it shows on its face that it is a mere pretext to avoid the error of the admission of incompetent evidence put in such a shape as not in fact to advise the jury of what was stricken out, but left so that the testimony pretended to be stricken out had its full force and effect with the jury, which error the trial court intensified and enhanced by permitting the opinion founded thereon to stand?" This question, like much else in the brief, contains assertions that are without support, and in this instance these assertions are not just to the trial court, to opposing counsel, or to this tribunal. There was nothing on the face of the motion which showed it to be a mere pretext, nor was there anything done by the trial court to mislead the jury. The opposing counsel offered to permit the motion made by the counsel of the appellant to be sustained just as they had made it; they refused and withdrew the motion, so that if they did not secure what they desired, the fault was their own. It was not for the trial court nor for opposing counsel to suggest to the learned counsel what it was that they wanted; it was enough to offer them what they asked.

We need not follow counsel in their discussion of the ques-

tions which might, perhaps, have arisen on Dr. O'Ferrall's testimony, if proper objections had been made and exceptions reserved; but as no such objections were made, there is no question presented for our decision. We may, however, remark of counsel's criticism on the opinion in *Cleveland, etc., R. R. Co.* v. *Newell, ante,* p. 264, that the doctrine there declared rests on solid principle, and is sustained by the decisions of the ablest courts of the land, as appears from the cases there cited, and from those referred to in our former opinion in this case.

It is asserted by counsel that we were in error in referring to the fact that Dr. Webster expressed an opinion. To this assertion of counsel a quotation from the record shall be our answer. On direct examination the counsel asked Dr. Webster this question : " What, in your medical opinion, Doctor, is the usual cause of such a phenomenon?" Answer. " Syphilis is the usual cause." Counsel say: " We despair of getting the law correctly enunciated unless we can get this court to look at the facts, and with this end in view we make the following extracts from Dr. Webster's testimony." Not stopping to speak in censure, as, perhaps, we should of the impropriety of this statement, we pass it with the remark that it is counsel, and not the court, that have overlooked the facts which appear in the record. Counsel print part of the examination of Dr. Webster, but only part, while we read his entire testimony. The opinion called for by counsel's question is not in the part of Dr. Webster's testimony printed in the brief, but, for all that, it is in the record.

The proposition made in our former opinion, that a person injured by the negligence of a carrier may recover although the injury was increased by a predisposition to disease, is assailed, but no authorities are cited that discuss the question. Our former decision upon this point was fortified by decisions of our own and many other courts, and since that opinion was written we have found others to which it may not be improper to refer. In the very recent case of

*McNamara* v. *Village of Clintonville*, 62 Wis. 207 (51 Am. Rep. 722), the subject is exhaustively discussed, and a great number of cases, among them some of our own, are cited. The court there said : "The predisposition to inflammatory rheumatism was an intervening cause, but it was set in motion by the tortious act complained of." The subject was much discussed in *Ehrgott* v. *Mayor, etc.,* 96 N. Y. 264 (48 Am. Rep. 622), where it was said, "When a party commits a tort resulting in a personal injury, he can not foresee or contemplate the consequences of his tortious act. He may knock a man down, and his stroke may, months after, end in paralysis or in death—results which no one anticipated or could have foreseen. A city may leave a street out of repair, and no one can anticipate the possible accidents which may happen, or the injuries which may be caused." Again, in the same opinion, it is said : "While both causes were proximate, that was the nearest and most direct. Still further. It was certainly impossible for the plaintiff to prove, or for the jury to find how much of the injury was due to either cause alone. It was wholly impossible to apportion the damage between the two causes. Shall this difficulty deprive the plaintiff of all remedy? We answer no. The wrong of the defendant placed the plaintiff in this dilemma, and it can not complain if it is held for the entire damage."

All the cases and all the authors that have given this subject careful consideration, so far as a diligent search in this and other cases has enabled us to discover, treat the rule laid down in the Squib case as applicable to all cases of negligence; not an author nor a decision confines it to the case of an intentional tort. 2 Thompson Negligence, 1084; 3 Sutherland on Damages, 714; Addison on Torts (3d ed.), p. 5; Cooley on Torts, 70. The length of the counsel's brief indicates that they have been industrious at least, and they have cited no case that lends their position the slightest support. A recent writer, from whom we quoted in our former

opinion, says of a position similar to that assumed by the appellant's counsel, that "it is the rankest nonsense to say that there is no such immediate connection between the wrong and the injury as to entitle the passenger to recover," and this is said after a very full examination of the adjudged cases. 2 Wood Railway Law, 1232. The instruction given by the court upon this subject, if it stood alone, would be correct, and taken, as all our cases and all the text-writers upon the subject say it must be, in conjunction with that given at the request of the appellant, which, by the way, asserts a doctrine utterly at variance with that now contended for, leaves no room to doubt that the jury were properly instructed.

In stating the reason why a rehearing should be granted, counsel say : " Because counsel for appellant, through inadvertence, failed to call attention to the cases of *Chicago, etc., R. R. Co.* v. *Sykes*, 96 Ill. 162, and *North Chicago Rolling Mills Co.* v. *Morrissey*, 18 Am. & E. R. R. Cases, 47, where a very different view of what the average intelligence of a juror could fail to understand, is expressed." The first of those cases asserts the doctrine of comparative negligence, and condemns an instruction which assumes to state facts which will entitle the plaintiff to recover in an action brought to recover damages for injuries received in attempting to enter a railroad train. . The instruction was condemned because it assumed facts that should have been left with the jury, and because it left the jury at liberty to assess damages at any amount they chose, not exceeding five thousand dollars, irrespective of the evidence. The doctrine of comparative negligence has always been denied in this State, and there is nothing in our former opinions, nor in the cases cited from our reports, that affirms that a jury may assess damages irrespective of the evidence, or that the court may usurp the province of the jury by assuming facts, so that the decision under immediate discussion has not the slightest bearing upon this case. . The second of the two cases simply decides that it is error to disregard the question of contributory negligence, and to give an in-

struction allowing a jury to award damages "without the slightest reference to any proof of the amount of damages sustained." There is nothing in either of those cases that conflicts with the decision in *City of Indianapolis* v. *Scott*, 72 Ind. 196, but if those cases did place the intelligence of jurors upon a plane as low as that which counsel would have us do, we should decline to follow them, for the cases in our own State, as well as elsewhere, declare that jurors are to be treated as men of average intelligence. *Union Mutual L. Ins. Co.* v. *Buchanan*, 100 Ind. 63, see p. 74; *McDonel* v. *State*, 90 Ind. 320, see p. 327. We are, at all events, quite content to so treat the jurors of Indiana. But, if we should adopt counsel's theory that the instruction of the trial court was understood by the jury to leave them at liberty to assess damages irrespective of the evidence, we should rate their intelligence very low, indeed much lower than that possessed by rational men of the lowest order of intellect.

Petition overruled.

Filed Feb. 17, 1886.