PIKE COUNTY HIGHWAY,
Defendant-Appellant,

v.

Troy V. FOWLER, Plaintiff-Appellee.

No. 2–1278A454.

Court of Appeals of Indiana,
First District.

May 1, 1979.

Robert A. Fanning, Locke, Reynolds, Boyd & Weisell, Indianapolis, for defendant-appellant.

Jack N. VanStone, Rice & VanStone, Evansville, for plaintiff-appellee.

LOWDERMILK, Presiding Judge.

## STATEMENT OF THE CASE

Defendant Pike County Highway Department seeks judicial review of the award by the Full Industrial Board of Indiana in favor of Plaintiff Troy V. Fowler. Defendant Highway Department challenges (1) the admission and consideration of certain expert, medical opinion testimony and (2) the sufficiency of the evidence to support the Board's findings of fact relating to the cause of Fowler's disability.

We affirm.

## FACTS

The facts most favorable to the award by the Full Industrial Board are that on March 21, 1975, Troy V. Fowler was employed by the Pike County Highway Department and was engaged in repairing a bridge. Fowler and other workers were carrying a wooden plank weighing approximately 250 to 300 pounds when the plank slipped out of Fowler's hands and struck him on the top of his left foot.

The following Monday, March 24, 1975, Fowler sought medical treatment from his family physician, Dr. Elbert, an osteopath, because he was suffering pain, numbness, and discoloration in his left foot. The osteopath found severe vascular damage in the left foot with a great amount of hemorrhaging as a result, and he believed the foot was fractured. He sent Fowler to a general surgeon who had the foot X-rayed, but no fracture was found. Dr. Elbert examined Fowler's foot again on March 31 and May 27, and he observed little change in the condition of the foot. He referred Fowler to an orthopedic surgeon, who, in turn, referred Fowler to Dr. Nachtnebel, a general surgeon with experience in vascular surgery. Dr. Elbert saw Fowler once more, on July 11, 1975, before Fowler consulted Dr. Nachtnebel. At that time Dr. Elbert believed that the toes of Fowler's left foot were beginning to show gangrene. He had been Fowler's physician for approximately 25 years and had never known Fowler to be seriously ill or to have any circulatory problems prior to the injury to Fowler's foot. Moreover, Fowler himself said that he had never had any problems with his circulation, legs, or feet.

Dr. Nachtnebel believed that Fowler was experiencing an "arterial insufficiency" in his lower left leg when he first examined him on July 11, 1975. A left femoral arteriogram disclosed a complete obstruction of Fowler's superficial femoral artery. Dr. Nachtnebel felt that Fowler was exhibiting "pre-gangrenous or impending gangrenous changes." On July 22 he performed a bypass graft of a vein onto an artery in Fowler's left thigh. For a few months Fowler's condition was improved, but by November of 1975 his leg began to get cold. Dr. Nachtnebel found an occlusion of the bypass graft, and on about November 18 he performed another bypass operation, this time using a Dacron prosthesis instead of a vein graft. Shortly thereafter another occlusion occurred, and on December 30, 1975, the surgeon amputated Fowler's foot and lower leg.

From March 22, 1975, through March 13, 1976, Fowler received compensation benefits for temporary total disability under an agreement with the Highway Department which was approved by the Industrial Board. Thereafter the Highway Department ceased to pay such benefits, and after an impasse in negotiations between the parties, Fowler filed with the Industrial Board

an application for adjustment of his claim. After a hearing before a hearing member and a review by the Full Industrial Board, the Board found in favor of Fowler and entered an award of compensation on November 28, 1978. In granting its award the Board made the following determinations:

"  *    *    *

That on the 21st day of March, 1975, Plaintiff herein was in the employ of the Defendant herein as a truck driver-laborer   .   .   .   that on said date, Plaintiff sustained personal injury by reason of an accident arising out of and in the course of his employment with Defendant while carrying a bridge plank, which fell on his left foot, of which said accident and injury the Defendant had knowledge and did furnish and pay for at least part, if not all, of the statutory medical attention and supplies; that Plaintiff's said accidental injury consisted of a severely mashed foot which later developed pre-gangrenous or impending gangrenous changes, resulting in the subsequent amputation of Plaintiff's left leg below the knee; that, thereafter, on the 16th day of April, 1975, the Industrial Board of Indiana approved a compensation agreement entered into by and between the parties under the terms of which Defendant paid Plaintiff compensation benefits for his temporary total disability as a result of his said accidental injury.   .   .   .

It is further found that Plaintiff's said accidental injury has reached a permanent and quiescent state and that as a result of his said accidental injury, Plaintiff has sustained the amputation of his left lower extremity below the knee.

        *    *    *  "

The Highway Department seeks a judicial review of the evidentiary basis of the Board's award.

### ISSUES

1.   Whether or not the Industrial Board's consideration of the opinion testimony of Dr. Elbert is contrary to law.

2.   Whether or not the Industrial Board's finding that the accidental injury to Fowler's foot resulted in gangrenous changes which, in turn, resulted in the amputation of Fowler's leg is contrary to law or unsupported by the evidence.

3.   Whether or not the Industrial Board's finding that Fowler's leg was amputated as a result of the accidental injury is against the weight of the evidence and influenced by improper considerations.

### DISCUSSION AND DECISION

*Issue One*

The Highway Department alleges error in the admission and consideration of expert testimony given by Dr. Elbert, the osteopath who examined and treated Fowler after his injury occurred. In particular, the Highway Department focuses on the following excerpt from a deposition of Dr. Elbert taken by Fowler for use as substantive evidence in his case:

"  *    *    *

Q.   36   Now I've furnished you with a copy of the deposition of Dr. Knachnabel [Nachtnebel].

A.   Yes, Dr. Knachnabel [Nachtnebel] and I've read it over.

Q.   37   You've seen Troy Fowler since his leg has been amputated?

A.   Yes.

Q.   38   Is there a relationship between the injury that he first told you about on the first day and the amputation of his leg?

MR. FANNING: To which we would object on the grounds that no foundation for this opinion testimony has been laid. This doctor has stated that he last examined the patient on July 11, 1976 [1975] and a reliance on other information would be clearly reliance on hearsay. A proper foundation has not been laid for this type of opinion evidence.

MR. VanSTONE: Go ahead.

A.   I feel that actually the man of course has been always in reasonably good health. I think you'd have to presume that first. He's never had any areas of

thrombophlebitis or circulatory disturbance in his entire body. All of a sudden we have this rather severe injury and here we end up with obviously a circulatory disturbance to the disturbed that he lost his foot [sic]. I would have to say that I must relate it in some way to the accident.

Q. 39 Then it would be your opinion that the accident was a precipitating cause of the loss of his leg?

MR. FANNING: To which we would object on the same grounds and on the further grounds that if the intent here is to pose a question by way of hypothetical, that the hypothetical is incomplete in that it fails to include material facts which are in evidence. Further is incomplete in that it fails to illicit [sic] the doctor's response based upon a reasonable degree of medical certainty. For the further reason that any response which this doctor would have would be purely speculative in that he did not examine the patient following July of 1976 [1975], and that all the evidence will show that all surgery was performed after that date, July 11, 1976 [1975].

A. I felt that the injury was related. The loss of the amputation was certainly related to the injury.

Q. 40 What did you base that opinion upon?

MR. FANNING: To which we would object for the same reasons as stated before.

A. Well, we know that anytime you have trauma or any time you even have major surgery there's always that possibility of having a thrombosis or embolus set up in the blood vessel just because of injury to the blood vessel.

Q. 41 Did you take into consideration the fact that he had been a patient of yours for a good number of years?

A. Yes. I actually to the insurance company I never charged him anything [sic].

Q. 42 Did you also take into consideration the various examinations that you have made of Mr. Fowler following his injury?

MR. FANNING: Please note a continuing objection to this line of questioning for the reasons stated above.

A. Yes, of course. I saw him as I say, basic examination. I remember my treatment was prescribed at the very first visit and as far as I know he carried on only that treatment. There was pain pills which was Darvon and the other treatments were carried on I presume right up until 7-11.

Q. 43 Also from your reading the deposition of Dr. Knachnabel [Nachtnebel]?

A. Yes.

* * * " (Our insertions)

The Highway Department argues that counsel for Fowler failed to establish a foundation and state a proper hypothetical question before eliciting Dr. Elbert's opinion on the cause of the amputation of Fowler's leg. The Highway Department says that Dr. Elbert had no personal knowledge of Fowler's condition, treatment, or surgery after he examined Fowler on July 11, 1975, and that an expert witness in Indiana cannot base his opinion upon his recollection and construction of the evidence, citing *Ditton v. Hart*, (1911) 175 Ind. 181, 93 N.E. 961; *Craig v. Noblesville & Stoney Creek Gravel Road Co.*, (1884) 98 Ind. 109; *Elliott v. Russell*, (1884) 92 Ind. 526. Rather, it is argued, an expert witness must base his opinion either upon his own examination or upon assumed facts given to him in a hypothetical question as a foundation for his opinion, citing *Ditton, supra*. The Highway Department maintains that Dr. Elbert's reference to his having read Dr. Nachtnebel's deposition, Question 36, *supra*, is an insufficient foundation for an opinion by Dr. Elbert relating to Fowler's condition after July 11, 1975.

The Highway Department further argues that the attempt by counsel for Fowler to belatedly establish a foundation, Questions 40 through 43, *supra*, after Dr. Elbert had given his opinion was insufficient for three reasons. First, it is said, Dr. Elbert did not

specify what facts from the period of July 11 through December 30 (the date of the amputation) he relied upon in formulating his opinion.

Let us pause here and consider the Highway Department's arguments raised thus far relating to the insufficiency of the foundation and the hypothetical question. Because Dr. Elbert gave his opinion in a deposition which was taken and submitted to the Industrial Board after the hearing and oral testimony had concluded, there was no opportunity for the hearing member to rule on the Highway Department's objections at the hearing. Furthermore, we find nothing in the record to indicate that these objections were later ruled upon. Consequently, we must assume that the testimony of Dr. Elbert to which the Highway Department objected was admitted into evidence.

■ We note, first, that from the evidence it is apparent that Dr. Elbert had considerable firsthand knowledge of Fowler's condition and his medical history. He had been Fowler's physician for many years, and he examined Fowler on four occasions within four months after the injury occurred. An expert witness speaking from personal observation need not be asked a hypothetical question prior to giving his opinion. *Murphy Auto Sales, Inc. v. Coomer*, (1953) 123 Ind.App. 709, 112 N.E.2d 589. Instead, he may express his opinion after stating the facts of which he has personal knowledge and upon which he is basing his opinion. *Conner v. First National Bank in Wabash*, (1947) 118 Ind.App. 173, 76 N.E.2d 262. Except for his subsequent explanation of the theory upon which he based his opinion and his admission that he considered Dr. Nachtnebel's deposition in arriving at his opinion, Dr. Elbert had already laid out a thorough factual foundation for his opinion, either in person at the hearing or later during the deposition, prior to stating his opinion. Furthermore, an attending physician may give his opinion as to the probable results of his patient's injuries even though he has not attended him continuously up to the time of the trial. *Louisville, New Albany & Chicago Rwy. v. Wright*, (1888) 115 Ind. 378, 16 N.E. 145.

■ Moreover, we note that the Highway Department's arguments thus far have gone to the procedure used in eliciting Dr. Elbert's expert opinion. The *Ditton, Craig,* and *Elliott* cases, *supra*, which the Highway Department cited all involved civil jury trials. It is well established that the strict rules of evidence, including those governing the admission of opinion testimony, do not apply to proceedings before the Industrial Board. *Harrison Steel Castings Co. v. Daniels*, (1970) 147 Ind.App. 666, 263 N.E.2d 288; *see* Ind.Code 22–3–4–2 and 22–3–4–6; Ind.Admin.Rules & Regs. (22–3–4–6)–1 (Burns Code Ed.). It is true that Dr. Elbert admitted that he had considered Dr. Nachtnebel's deposition in arriving at his opinion and that he did not specify what facts in that deposition he relied upon. However, in light of Dr. Elbert's considerable firsthand knowledge and the fact that Dr. Nachtnebel's deposition emphasized his contrary opinion that Fowler's circulatory problems were due to arteriosclerotic obstructive disease, in this Industrial Board proceeding it was not reversible error to consider Dr. Elbert's opinion testimony, regardless of any possible irregularity in the manner in which it was presented.

We now return to the Highway Department's arguments concerning the belated attempt to establish a foundation. It is contended, secondly, that there is no evidence in the record that the occlusion in Fowler's artery was caused by a thrombus or embolus which was, in turn, caused by trauma, Question 40, *supra*, or that there was any injury to the blood vessel where the occlusion was found by Dr. Nachtnebel. Thus, the Highway Department concludes that Dr. Elbert's opinion is "defective, insufficient and of no probative value" because it is based on facts not in the record, citing *Ecker v. Ecker*, (1975) 163 Ind.App. 339, 323 N.E.2d 683; *Town of Newburgh v. Jones*, (1945) 115 Ind.App. 320, 58 N.E.2d 938. Moreover, the Highway Department argues that if such a thrombus or embolus did exist, it would have killed Fowler before it could have passed from his foot through

the circulatory system to his heart and lungs and then back down to his thigh. Consequently, the Highway Department asserts that the Board's award to Fowler on the basis of the osteopath's opinion must have been based upon "surmise, speculation or conjecture" and that an award with such a basis is prohibited by Indiana case law.

We disagree with the contention that there is no evidence in the record to support the osteopath's opinion that the trauma of the plank's falling on Fowler's foot caused a thrombus or embolus which resulted in an occlusion. Fowler testified in person and Dr. Elbert testified by deposition that Fowler had never been known to have any prior circulatory problems. During Dr. Elbert's testimony in person before the hearing member, he stated that his opinion as to why Fowler's injury did not improve before the end of May 1975 was that there was "[s]evere vascular damage." Dr. Nachtnebel testified in his deposition that when he first saw Fowler on July 11, 1975, his impression was that there was "an arterial insufficiency of the left lower extremity. . . ." When Dr. Nachtnebel performed a left femoral arteriogram on July 16, he found that Fowler had "complete obstruction of his superficial femoral artery. . . ." In Dr. Elbert's deposition, Question 40, *supra*, he stated that "we know that anytime you have trauma . . . there's always that possibility of having a thrombosis or embolus set up in the blood vessel just because of injury to the blood vessel." An attending physician may give an opinion based partly upon knowledge gained from books or other reliable sources. *Illinois Steel Co. v. Fuller*, (1939) 216 Ind. 180, 23 N.E.2d 259.

The proceedings before the hearing member in Fowler's action consisted, in part, of the oral testimony of Fowler, his foreman, and Dr. Elbert, and the admission into evidence of Dr. Nachtnebel's deposition and, in part, of Dr. Elbert's deposition, taken during a continuance in the proceedings and later submitted to the hearing member. Thus, Dr. Nachtnebel's deposition was in evidence at the time Dr. Elbert gave his opinion. As we have already held, in this Industrial Board proceeding there was no reversible error in Dr. Elbert's giving his opinion without being given the facts in a hypothetical question.

We now hold that there was a sufficient amount of evidence in the record from the oral testimony of Fowler and his witnesses and from the deposition of Dr. Nachtnebel, coupled with Dr. Elbert's professional knowledge, to provide an adequate basis for Dr. Elbert's opinion. This expert opinion was not "defective" or "insufficient" or based upon "speculation." *Cf. Delaware Machinery & Tool Co. v. Yates*, (1976) Ind. App., 351 N.E.2d 67 (doctor's opinion that stress during surgery caused coronary occlusion); *Town of Newburgh v. Jones, supra*, (doctor's opinion that electric shock caused death three months later).

As to the argument that a thrombus or embolus would have killed Fowler if it had passed through his body as the Highway Department says that Dr. Elbert must have assumed it did, we find no evidence in the record to support this contention. Consequently, the Highway Department is trying to introduce evidence during this judicial review, which is clearly impermissible. *See Allen v. United Telephone Co.*, (1976) Ind.App., 345 N.E.2d 261.

Thirdly, the Highway Department cites *Louisville, New Albany & Chicago Rwy. v. Falvey*, (1885) 104 Ind. 409, 3 N.E. 389, for the proposition that Dr. Elbert, in formulating his own opinion, improperly relied upon the opinions expressed by Dr. Nachtnebel regarding "the reason for the surgery on and the amputation of Mr. Fowler's leg. . . ." In *Falvey, supra*, a hypothetical question addressed to a medical expert assumed, "as one of the facts, the opinion of another physician that Miss Falvey, the appellee, was not suffering from a lesion of the spine," 104 Ind. at 421, 3 N.E. 389, 396, and the Supreme Court held the assumption of that fact improper.

We note, first, that *Falvey, supra*, involved a civil jury trial, where the rules of evidence are more stringent than in a pro-

ceeding before the Industrial Board. *Harrison Steel Casting Co. Daniels, supra.* Secondly, because no formal hypothetical question was posed at the time Dr. Elbert gave his opinion, it is not clear here, as it was in *Falvey, supra,* that the opinion assumed as fact another opinion. Dr. Elbert admitted that his opinion was based, in part, upon his reading of the surgeon's deposition, but he did not specify what statements in that deposition he actually relied upon. We know that Dr. Elbert did not rely upon Dr. Nachtnebel's opinion as to causation, i. e., arteriosclerotic obstructive disease, or upon Dr. Nachtnebel's belief that the injury to Fowler's foot was not related to the amputation. Apparently Dr. Elbert did rely upon Dr. Nachtnebel's statements about the existence of an arterial insufficiency and about his performing the amputation, but these statements are more in the nature of objective, factual evidence than opinion evidence. We cannot say that Dr. Elbert definitely relied upon Dr. Nachtnebel's opinions in formulating his own opinion.

█ Finally, the Highway Department contends that Dr. Elbert failed to satisfy the rule announced in *Palace Bar, Inc. v. Fearnot,* (1978) Ind., 381 N.E.2d 858, 864, that "[a] doctor's testimony can only be considered evidence when he states that the conclusion he gives is based on reasonable medical certainty that a fact is true or untrue." We must first point out that in *Palace Bar, supra,* the medical opinion was stated in a less positive manner than in the case at bar. Secondly, we think that Dr. Elbert substantially complied with the requirement of *Palace Bar, supra,* when he stated in his answer to Question 39, *supra,* "I felt that the injury was related. The loss of the amputation was certainly related to the injury."

We find no reversible error in the Industrial Board's consideration of Dr. Elbert's opinion testimony.

## Issue Two

The Highway Department next asserts that even if, as we have already held, Dr.

Elbert's testimony was properly considered, Fowler failed to prove by sufficient and competent evidence a causal relationship between his accidental injury and the amputation. It argues that there is no evidence to support the Industrial Board's inference that pre-gangrenous changes were caused by the injury or that the pre-gangrenous changes led to the amputation. Rather, the Highway Department says, the evidence indicates that it is more likely that the pre-gangrenous changes were due to an "arteriosclerotic occlusion of the superficial femoral artery in Mr. Fowler's left thigh" and that no gangrenous changes were found after the first bypass operation.

█ We concede that the Industrial Board could have found that the amputation was necessitated by an arteriosclerotic occlusion, rather than by a thrombus or embolus formed as a result of the injury. However, it is settled that this court will only consider the evidence supporting the Board's award, *Delaware Machinery & Tool Co. v. Yates, supra,* and that weighing the conflicting testimony of medical experts is the duty of the Industrial Board rather than the Court of Appeals, *Combs v. National Veneer & Lumber Co.,* (1974) 160 Ind.App. 501, 313 N.E.2d 76. Furthermore, we cannot reverse a finding of the Industrial Board unless the evidence and all reasonable inferences from that evidence are so conclusive as to require a contrary finding. *Tonn & Blank, Inc. v. Curtis,* (1967) 141 Ind.App. 115, 226 N.E.2d 551. We found in Issue One that there was sufficient evidence to support Dr. Elbert's opinion, and we think this evidence together with Dr. Elbert's opinion constituted a sufficient evidentiary basis from which the Industrial Board could conclude that the injury caused the pre-gangrenous changes which, in turn, resulted in the amputation.

## Issue Three

While conceding that the Court of Appeals does not reweigh evidence, the Highway Department contends that the weight of the evidence here is so overwhelmingly in its favor that the Industrial Board's

award must have been greatly influenced by improper considerations. In particular, the Highway Department argues that Dr. Nachtnebel is better informed about vascular problems than Dr. Elbert and that because of the surgery he performed on Fowler, Dr. Nachtnebel was in a better position to make a diagnosis. Consequently, the Highway Department concludes, "considerations outside the medical facts must have been undertaken and given in to."

The Highway Department does not allege any particular outside considerations which may have influenced the Board. Also, as we have already said, it is for the Board to decide which medical expert it will believe. *Combs v. National Veneer & Lumber Co., supra.* We cannot pursue this matter without a more specific charge of impropriety.

Finding no reversible error in the award and findings of the Industrial Board, we affirm.

LYBROOK and ROBERTSON, JJ., concur.