NOBLESVILLE CASTING, DIVISION OF TRW, INC., Appellant-Defendant,

v.

Freddie J. PRINCE, Appellee-Plaintiff.

No. 2–580A132.

Court of Appeals of Indiana,
Fourth District.

Aug. 24, 1981.
Rehearing Denied October 8, 1981.

Paul L. Fields, Lowe, Gray, Steele & Hoffman, Edwin J. Bunny, Indianapolis, for appellant-defendant.

Arvin R. Foland, Noblesville, for appellee-plaintiff.

CHIPMAN, Presiding Judge.

Defendant Noblesville Casting Division of TRW, Inc. seeks review of an award of the Full Industrial Board of Indiana in favor of Freddie J. Prince. Noblesville Casting challenges Prince's expert medical testimony on the issue of causation in light of the expert testimony requirements of *Palace Bar, Inc. v. Fearnot*, (1978) 269 Ind. 405, 381 N.E.2d 858. We agree that under these requirements the expert testimony given is not sufficient to prove the alleged industrial accident caused Prince's injuries. Accordingly, we reverse.

The evidence in a light most favorable to the judgment follows:

Prince was a maintenance man for Noblesville Casting and did general repair work throughout the plant. On May 6, 1976, he was working on a flat car line which transported heavy (200–300 pounds) flasks. He and two others were placing a flask on the line and as the other two men lifted their side, an excess of the flask weight shifted toward Prince. He suffered immediate pain and had difficulty straightening his back. He reported the incident to his superior, left work for the remainder of the day and consulted a doctor for a possible hernia (although none was found). Prince continued working until October 18, 1977, although he complained periodically of back pain.

On October 18, 1977, Prince entered the hospital for back surgery. Dr. William H. Norman examined him on November 6 and performed a spinal fusion on November 8. The fusion was intended to restrict motion and relieve pain. Prince had previously undergone two back surgeries which consisted of disk removals in 1966 and 1969. The first resulted in a 20% permanent partial impairment, the second an additional 15% impairment. Dr. Norman stated that the 1977 surgery increased Prince's impairment another 15% due to restriction of motion.

The relevant portion of the Industrial Board's findings state:

"4. That Plaintiff had no difficulty in performing his job during the year prior to May 6, 1976, but that he was impeded in his performance after May 6, 1976. Plaintiff suffered from pain in his back after May 6, 1976 and complained to his superiors of his discomfort during the duration from May 6, 1976 to October 18, 1977.

5. Plaintiff continued to work, but as time passed, he became more impaired until on October 18, 1977, while at work, he could not continue.

6. That the pain Plaintiff originally experienced in his groin, left in a few days after May 6, 1976, but the back and leg pain never left, but rather intensified. This increased impairment resulted in a decrease in the number of hours Plaintiff was able to work from May 6, 1976 to October 18, 1977. The impairment was as a result of stiffness, strain and pain.

7. Plaintiff reported the injury of May 6, 1976, to his employer's insurance adjuster on October 19, 1977, and then described the on-setting of the disability to Dr. Sam J. Davis and also advised Dr. William Norman of the injury as well.

. . . .

10. That on April 4, 1979, Plaintiff had a 30% voluntary limitation of motion of his back.

11. That as a result of the injury suffered by the Plaintiff, during the course of his employment on May 6, 1976, Plaintiff has suffered additional permanent impairment of 15% to the man as a whole.

12. That Plaintiff was totally disabled as a result of the injury on May 6, 1976 from October 18, 1977 until July 12, 1978.

13. That Plaintiff's injury was as a result (proximate cause) of a strain being imposed upon a pre-existing condition, i. e., the aggravation thereof.

14. Judicial notice is taken and Defendant's proposed findings filed June 21, 1979, show that Plaintiff had a pre-existing condition of a weakened back, due to two work-related prior disc surgeries, which resulted in Plaintiff being rated 20% permanent partial impairment of the man as a whole in 1966, and an additional 15% in 1969.

15. The strain suffered on May 6, 1976,[1] aggravated that condition resulting in (proximate cause) the necessity of a spinal fusion and the additional permanent impairment of 15% to the man as a whole over the impairment existing on May 6, 1976."

Dr. Norman was the sole expert witness on the issue of causation. His deposition which was introduced into evidence reveals the following as his most favorable opinion on causation:

"83 Q Well, from the physical examination and from what you observed during the operation, the kind of repair that you did make, what are the causes of such an injury or that would require this kind of repair?

A Well, I think, basically, we do know that this man had previous trouble.

He had had previous disk trouble.

He had subsequent changes as a result of that; namely, that of narrowing of the disk and what we call degenerative or arthritic changes.

Of course, during this period he had evidence of sciatica nerve-root irritation from the changes that occurred in this area.

1. Prince has specifically claimed and the Board found solely on the theory that Prince's injuries were related to a specific incident. We note that a cause of action may have also existed under the theory that Prince's injuries were due to a gradual deterioration of his back from the strain placed on his preexisting condition by the performance of his daily duties. *Calhoun v. Hillenbrand Industries, Inc.*, (1978) 269 Ind. 507, 381 N.E.2d 1242; *American Maize Products Co. v. Nichiporchik*, (1940) 108 Ind.App. 502, 29 N.E.2d 801. However, it is not our place to choose a theory of recovery for plaintiff or affirm a judgment on a theory not properly presented to the trier of fact. *DDR Computer Service Bureau, Inc. v. Davis*, (1980) Ind. App., 411 N.E.2d 722.

We see it at times when patients have had an injury superimposed upon these conditions which seems to aggravate or increase their ability and symptoms.

84 Q Certain external trauma could cause the sort of thing for which you operated on him?

A Well, it could be—Let me say it this way:

It could be an aggravating factor in producing more irritation or symptoms in this area."

"96 Q Now, I would like for you to assume for a moment a few facts.

If you would assume that Mr. Prince, back about May, 1977, [sic] was lifting a heavy object—A flask—at his employment and that in so doing as he was stooped over, the weight shifted to him and at that particular time he experienced pain down into his legs, down into his groin and, then, taking into consideration the history that you did take before the operation and what you have seen from your personal observations during the operation and thereafter; what, if any opinion, do you have with a degree of medical certainty as to the relationship between the lifting of the flask and necessity for the spinal surgery?

. . . .

[objection to hypothetical, overruled by Board]

A We know it is possible with the type of history you have given me, to reinjure his back, and we would in most cases, unless some evidence of fracture or dislocation or something of that nature, we would have to consider it as a strain or injury super-imposed upon a preexisting condition or an aggravation as I stated.

97 Q Now, as I understand the history that you took, you are acquainted with two prior laminectomys [sic]?

A Yes. Disc surgeries.

98 Q The history that you have given, taking into consideration those things and the history that you took from the patient before the operation and assuming that on or about May the 6th, 1977, [year amended to 1976] while at his employment at Noblesville Casting Company, Mr. Prince, while stooping over to lift up a flask that had fallen from its little flatcar, while being assisted by two other individuals and that flask—Weighing 2–to–300 lbs and being in a stooped-over position—at that time the weight shifting on him and experiencing sharp pain in his legs and low back and into his groin, assuming what you observed in the X-rays, the things today about which you have testified, what is your opinion as to the relationship of such experience of pain and injury and the necessity for the spinal fusion that you performed?

. . . .

[objection to hypothetical, overruled by Board]

A I would have to say that with that type of history, it is possible to produce enough additional trouble and aggravation to require subsequent treatment as we have described."

In *Palace Bar, Inc. v. Fearnot, supra,* our Supreme Court granted transfer to reverse a trial court's entry of a wrongful death judgment holding that a judgment on the evidence was proper, since there was no evidence presented on the issue of causation. There it decisively stated:

"The probative value of the testimony of an expert witness is such witness' opinion as an expert based on facts and circumstances given to him or shown to him subsequent to the occurrence of the event. A doctor's testimony can only be considered evidence when he states that the conclusion he gives is based on reasonable medical certainty that a fact is true or untrue. A doctor's testimony that a certain thing is *possible* is no evidence at all. His opinion as to what is possible is no more valid than the jury's own speculation as to what is or is not possible. Almost anything is possible, and it is thus improper to allow a jury to consider and base a verdict upon a 'possible' cause of death."

*Palace Bar, Inc. v. Fearnot, supra*, 381 N.E.2d at 864.

Prince attempts to distinguish *Palace Bar, Inc. v. Fearnot, supra*, by simply stating (without benefit of any citation to authority):[2]

> "*Palace Bar, Inc. v. Fearnot*, (1978) [269] Ind. [405], 381 N.E.2d 858, is distinguished because in compensation cases a doctor's conclusion need not be based on a reasonable medical certainty that a fact is true or untrue."

Although Prince cites *Pike County Highway v. Fowler*, (1979) Ind.App., 388 N.E.2d 630 for other purposes, he fails to acknowledge that it applied the *Palace Bar* requirements to an Industrial Board appeal. There the court held that the medical expert "substantially complied" with the *Palace Bar* requirements when he stated: "I felt that the injury was related. The loss of the amputation was certainly related to the injury." *Pike County Highway v. Fowler, supra*, at 637.

Here on the issue of causation Dr. Norman only stated:

> "It [the May 6, 1976 incident] *could* be an aggravating factor ...." (emphasis added)
>
> "We know it is *possible* with the type of history you have given me, to reinjure his back, and ... we would have to consider it [the possible reinjury] as a strain or injury superimposed upon a preexisting condition or an aggravation ...." (emphasis added)
>
> "[I]t is *possible* to produce enough additional trouble and aggravation to require subsequent treatment ...." (emphasis added)

No expert testimony was given that based on a reasonable medical certainty the May 6, 1976, incident necessitated the spinal fusion performed on November 8, 1977. The above testimony reveals Prince could have

reinjured his back on May 6, 1976, which could possibly be an aggravating factor necessitating the surgery. As stated in *Palace Bar, Inc. v. Fearnot, supra*, 381 N.E.2d at 864: "A doctor's testimony that a certain thing is *possible* is no evidence at all." Thus, here we find *no evidence* to support the Board's finding that the May 6, 1976, incident was the proximate cause of Prince's surgery. We, therefore, must reverse the award.

MILLER, J., concurs in result.

YOUNG, J., concurs.

2. Prince later in his brief alleges that an expert's testimony that an occurrence "can cause" an injury is sufficient evidence of causation in an Industrial Board appeal. He cites *Harrison Steel Castings Company v. Daniels*, (1970) 147 Ind.App. 666, 263 N.E.2d 288, as authority for this proposition. Assuming *arguendo*, that this is the holding of the case it would nonetheless be superseded by *Palace Bar, Inc. v. Fearnot, supra*, and *Pike County Highway v. Fowler*, (1979) Ind.App., 388 N.E.2d 630.