Glendin UNDERHILL, Appellant
(Defendant below),

v.

Richard L. DEEN, Administrator of the
Estate of Sigler Underhill, Deceased,
Appellee (Plaintiff below).

Glendin UNDERHILL, Edith Lynch, Dal-
ice Underhill, Murel Underhill, Thomas
Underhill, Eithel Wright, Ethel Atkins,
Peggy Lou Thomas, Gerry Sigler, Ethel
Whitlow, Cordelia Wolfe, Diana Brooks
and Richard T. Sigler, Appellants (De-
fendants below),

v.

Richard L. DEEN, Administrator of the
Estate of Sigler Underhill, Deceased,
and Bertie Byerly Underhill, Appellees
(Plaintiffs below).

No. 4–382A61.

Court of Appeals of Indiana,
Fourth District.

Dec. 15, 1982.

Howard B. Lytton, Jr., Steven E. Ripstra, Lytton & Ripstra, Jasper, for appellants.

Gary Becker, Zoercher, Becker & Huber, Tell City, for appellees.

CONOVER, Judge.

## STATEMENT OF THE CASE

This is an appeal from a judgment in Perry Circuit Court ordering the defendant-appellants, the brothers, sisters, neices and nephews of Sigler Underhill (devisees) to pay a money judgment of $17,471.91 to Sigler's estate. Glendin Underhill, brother of Sigler, was also ordered to reconvey real estate to the estate. The court further found Sigler's will to have been executed when he was of unsound mind. Probate of the will was refused.

Affirmed.

## ISSUES

1. Was expert opinion evidence properly admitted?

2. Should a new trial have been granted on the basis of newly discovered evidence?

3. Was there sufficient evidence to support the decision of the trial court?

## FACTS

Sigler Underhill was diagnosed as senile by two doctors on separate occasions, May 8, 1979, and July, 1980. Both doctors testified Sigler's senility was pronounced and would have impaired his ability to contract or exercise his own will in matters pertaining to the disposition of his property.

On May 18, 1979, Sigler executed a will leaving the entirety of his estate to his brothers, sisters, neices and nephews. Glendin Underhill, Sigler's brother, accompanied Sigler on this occasion. Bertie Underhill, Sigler's wife, testified Glendin had threatened to have Sigler make a will leaving her out. Glendin denied making that statement, but did admit it was necessary to get Sigler away from Bertie before a new will could be drawn. The attorney who prepared the will believed Sigler to be competent at the time he executed his will.

On August 30, 1980, Sigler was escorted to the bank by Glendin. Sigler withdrew $17,471.91. On September 3, 1980, the cashier's check from the bank was endorsed by Sigler and given to Glendin. Bertie saw Sigler, with Glendin's assistance endorse the check, describing the event as follows:

A Well, Sigler he was taking Sigler's hand putting it on the check to guide him along and I asked Sigler not to sign the check because he always wanted me to do his monthly checks that way. He wanted me not to sign them til he was ready to cash them. I says, "Don't sign that check, Sigler, until you're ready to cash it. You may have a wreck before you get to where you're going." He pushed me back, Glen did and says, "Leave him alone. He's not able to take care of hisself and you're not much better."

Q And, what happened to that check then after it was signed by Sigler?

A Well, he took it and transferred it over to his account.

Q Did Glendin tell you or give you any representation about what would be done with that money?

A No, he did not. He didn't tell me anything til after he got his hands on it and got control of it and then he told me I no longer had no say about that money.

Glendin later distributed the money to Sigler's brothers and sisters and the children of a deceased sister.

On the same day Sigler also executed a warranty deed conveying all his real property to Glendin. Glendin's testimony showed that he took Sigler to the office of an attorney who had prepared a warranty deed according to Glendin's instructions, conveying Sigler's real property. When Glendin and Sigler arrived Glendin's name was added to the deed as grantee. Sigler, with apparent difficulty, then signed the deed.

Conflicting testimony was offered regarding Sigler's soundness of mind during the relevant period. Several of the devisees, and other friends of the decedent testified Sigler retained his mental faculties during the last years of his life and was capable of conducting his own affairs. Bertie, Drs. Craig and Dillman, Sigler's stepson from a previous marriage, and other friends of Sigler gave contrasting testimony. By their statements they revealed a noticeable decline in Sigler's physical and mental health, observed as early as 1972. They agreed that Sigler's mental condition worsened as time progressed.

One witness stated Sigler and he agreed to continue a leasing agreement for Sigler's farm in the fall of 1980, an agreement they had for several years. He later learned Sigler had conveyed the land to Glendin prior to his agreement to continue the lease agreement. Novel Underhill, an adverse party, testified Sigler did not have the ability to exercise his own will concerning the disposition of his property during the last years of his life.

The court made the following findings of fact and order:

6. That on May 8, 1979, the decedent, Sigler Underhill, was examined by Dr. H.L. Craig of Huntingburg, Indiana, a physician who had known Mr. Underhill and treated him for many years prior to that date.

7. That on May 8, 1979, and continuously thereafter until the date of his death on October 23, 1980, the decedent was suffering from advanced senility.

8. That on May 18, 1979, the decedent, Sigler Underhill, did not have sufficient mind and memory to know the extent and value of his property; the numer [sic] and the names of those who were the natural objects of his bounty; their deserts with reference to their conduct toward him; nor could he keep these matters and things in his mind on that date long enough to make a valid will.

9. That the Will dated May 18, 1979, should not be admitted to probate because of the unsoundness of mind of the testator on that date.

. . . .

11. That on August 30, 1980, the decedent, Sigler Underhill, executed a certain Warranty Deed to the foregoing described real estate to his brother, Glendin Underhill, which said deed is recorded in Deed Record 81, at pages 732–733 in the Office of the Recorder of Perry County, Indiana.

12. That on or about September 3, 1980, Sigler Underhill transferred the moneys obtained from the certificate of deposit at the Tell City National Bank, Tell City, Indiana, in the amount of $17,474.91 to his brother, Glendin Underhill.

13. That at the time of the transfer of said real estate and at the time of the transfer of said moneys from the Tell City National Bank, Tell City, Indiana, Sigler Underhill did not have the mental capacity or sufficient mind and memory to comprehend the nature and extent of his acts and did not understand the nature of the business in which he was engaged.

14. That said transfers should be set aside due to the unsoundness of mind of

Sigler Underhill at the time of making the same.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:

1. That the estate of Sigler Underhill, deceased, is hereby adjudged the true and lawful owner of the real estate described in paragraph 10 of the findings of fact herein, and of the moneys in the amount of $17,474.91 which were transferred by Sigler Underhill on or about September 3, 1980.

2. That Plaintiff, Richard L. Deen, is hereby awarded judgment against the Defendants in the sum of $17,474.91.

3. That the deed from Sigler Underhill to Glendin Underhill dated August 30, 1980, and recorded in the Office of the Recorder of Perry County, Indiana, in Deed Book 81, pages 732–733 is fraudulent and void and is hereby set aside, and Defendant, Glendin Underhill, is hereby ordered to convey the real estate described in finding paragraph 10 herein to the Plaintiff, Richard L. Deen, as administrator of the estate of Sigler Underhill, deceased, by Warranty Deed within ten (10) days from the date hereon. In the event said Defendant fails or refuses to execute the Warranty Deed and any other documents necessary to vest title in Plaintiff within said ten (10) day period, then Gary Becker is hereby appointed Commissioner for the purpose of executing said Warranty Deed on behalf of Defendant, Glendin Underhill, and any other documents necessary to convey title to the plaintiff herein.

4. That the objections filed herein by the Plaintiff to the purported last will and testament of Sigler Underhill dated May 18, 1979, are hereby sustained, and that said instrument propounded as the last will and testament of Sigler Underhill be, and the same is hereby, denied probate.

## DISCUSSION AND DECISION

### EXPERT WITNESSES

During the trial two doctors testified, based upon their observations of Sigler during the last years of his life, that he suffered from senility and was not competent to manage his personal and business affairs. The devisees opposed the introduction of these opinions because the foundation was inadequate to permit an opinion of this nature.

■ There are two requisites for the admission of expert testimony. The subject matter of the testimony must be beyond the understanding of a layman so they cannot assess the evidence presented and draw an informed conclusion. Also, the witness must have sufficient skill and knowledge in the field to aid the trier of fact in its search for the truth. *Davis v. Schneider,* (1979) Ind.App., 395 N.E.2d 283.

■ The decision to admit expert testimony is one that rests solely with the trial court. *Davis, supra.* We will reverse such a decision only if the trial court has abused its discretion, that is, drawn an erroneous conclusion in judgment, one clearly against the logic and effect of the facts and circumstances or the reasonable and actual deductions to be made from such evidence. *State v. Bouras,* (1981) Ind.App., 423 N.E.2d 741.

■ Glendin does not challenge the propriety of the doctors' diagnosis of senility. Rather, he argues that since neither doctor discussed Sigler's business affairs with him and had no personal knowledge of his affairs, they were not properly permitted to draw conclusions of that nature. If an expert witness has firsthand knowledge of the subject matter of his testimony, he may testify to his own observations, inferences, and conclusions. *Davis, supra.* A physician, testifying as an expert may give his opinion as to the probable effect of a patient's medical condition without having shown continuous contact with the patient. *Pike County Highway v. Fowler,* (1979) Ind. App., 388 N.E.2d 630. Further, medical testimony may be admitted to show the connection between a disease and the decedent's soundness of mind. *Boland v. Claudel,* (1914) 181 Ind. 295, 104 N.E. 577.

The evidence disclosed Dr. Craig had known and treated Sigler since 1960. He offered facts showing the decline in Sigler's mental and physical condition which supported his conclusion Sigler was senile. Dr. Dillman gave comparable testimony, although his contact with Sigler covered a shorter period of time. Both doctors concluded Sigler's mental health had deteriorated so far it was impossible for him to exercise his will in his personal affairs.

██ The doctors' opinions were properly admitted. Although neither doctor discussed Sigler's personal and business affairs, they did recite factual observations supporting their conclusions. Sigler was unable to answer questions about his health and physical well-being. His appearance gave rise to an inference of senility. He could neither dress himself nor get around without assistance, and was incapable of making simple rational conversation about his own health. From these observations the doctors could conclude Sigler's senility had progressed to a state where he could not handle his personal affairs, exercise the requisite intent to make a gift or execute a will. *Thorn v. Cosand,* (1903) 160 Ind. 566, 67 N.E. 257 (gifts); Ind.Code 29–1–5–1 (testamentary capacity).

The trial court properly admitted this expert testimony.

## NEWLY DISCOVERED EVIDENCE

██ Glendin submitted affidavits after the trial court had rendered its decision, stating Dr. Craig had confused Sigler with another person. He argues that evidence should result in a new trial. Before we will order a new trial on the grounds of newly discovered evidence the moving party must demonstrate:

1. The newly discovered evidence is material and relevant.
2. The evidence is material, not merely cumulative or impeaching.
3. The evidence could not have been discovered before trial by the exercise of due diligence.
4. The evidence is of such a nature it would probably produce a different result upon retrial.

*Mikesell v. Mikesell,* (1982) Ind.App., 432 N.E.2d 55.

██ The devisees make no showing this information was not discoverable before trial. There is a strong presumption that evidence is discoverable before trial, and any such evidence will be closely scrutinized. *Offutt v. Sheehan,* (1976) 168 Ind. App. 491, 344 N.E.2d 92.

██ The devisees had abundant opportunity to discover any mistake as to Sigler's identity. Their attorney was present at a pre-trial deposition of Dr. Craig and had ample opportunity to examine him concerning his patient's identity during cross-examination. The question is not whether the evidence was discovered, it is whether it could have been discovered by the exercise of due diligence. If so, the newly discovered material may not serve as the basis for a new trial. *Farley v. Farley,* (1977) 172 Ind. App. 120, 359 N.E.2d 583. The devisees had ample opportunity to question Dr. Craig's testimony before trial.

Nor is there any showing that, taken as true, this evidence would produce a different result. Other evidence was presented which adequately supported the trier of fact's determination, including other like testimony by Dr. Dillman.

This newly-discovered evidence does not warrant a new trial.

## SUFFICIENCY OF THE EVIDENCE

Glendin contends that, absent the expert medical testimony, there is no evidence from which the court could have concluded Sigler was incompetent. Since we have already resolved the issue of medical testimony adversely to Glendin's contentions this argument presents no issue for review.

Finding no error, we affirm.

MILLER, J., and YOUNG, P.J. concur.